IN RE SMITH.

(No. 83-CA-53—Decided March 23, 1984.)

*Messrs. Faust, Harrelson, Fulker & McCarthy* and *Mr. Robert M. Harrelson,* for appellant.

*Messrs. LeFevre, Foster, Wannemacher & Baer* and *Ms. Michelle Gearhardt,* for appellee.

*Messrs. Thornburgh & Thornburgh* and *Ms. Nancy Thornburgh,* for Gary Smith.

BROGAN, P.J. Appellant, Daniel Fisher, appeals from the judgment of the Miami County Juvenile Court vacating its previous judgment "setting custody" of Joseph N. Smith, a minor child, with the appellee, Susanne R. (Smith) Zimmerman, and the making of additional orders regarding support, visitation, medical expenses, and tax exemption status. Appellant asserts three assignments of error which will be discussed after a discussion of the facts which led to this appeal.

Appellee was formerly married to Gary Smith, Jr. Four children were born of the marriage. The Smiths were divorced in January 1979. Subsequent to the divorce, appellee in the early summer of 1979 engaged in sexual intercourse with Gary Smith and became pregnant. She denied engaging in sexual relations with anyone else. Appellee informed Gary Smith she was pregnant and he denied paternity. The child, Joseph, was born prematurely on March 19, 1980, and again Gary Smith refused to accept responsibility for the child. After discussing the matter with her sister and brother-in-law, Daniel Fisher, Fisher agreed to sign his name on the

child's birth certificate as the child's father so that appellee's infant son would not be a "bastard." Appellee represented that she agreed to the arrangement on the basis that he would not insist on visitation privileges.

When appellee became pregnant, she was receiving welfare benefits for herself and her children. After Joseph was born, she informed the welfare department that appellant was not the father of her newborn child, but that Fisher had signed the birth certificate. They informed her she should list Fisher as the father of the child because of his signature on the birth certificate. On the welfare application form, appellee made the following statement:

"Because Daniel Fisher is the legal father, but not the natural father of Joseph Smith I feel it would not be in the best interest to pursue child support. If the welfare department must pursue it then I cannot object to trying for support."

Appellee stated she cooperated with the welfare department because she feared she would lose her welfare benefits. Shortly thereafter, on April 22, 1981, the juvenile court, upon agreement of appellant and appellee, awarded custody of Joseph Smith to appellee and ordered appellant to pay $10 weekly for the support of the child and to pay the extraordinary medical expenses of the child. Appellant was granted the right to claim the child as an exemption for tax purposes, and he obtained visitation privileges. Gary Smith was not made a party to the complaint for custody. Although appellee stated Gary Smith was the biological father, the prosecutor pursued appellant because he signed as "informant" on the birth certificate.

On April 30, 1981, the juvenile court ordered that all support payments received by the bureau of support from Fisher be paid to the welfare department. On November 16, 1981, the bureau of support brought a citation in contempt for appellant's failure to pay child support as previously ordered on April 22, 1981 in this matter. As of November 13, 1981, the bureau of support showed an arrearage of $316.20 or approximately thirty weeks of nonpayment. (The parties stipulated that at the time of the motion to vacate hearing, appellant had paid $255 in child support and was in arrears $729.30 in support obligations.)

Appellee acknowledged that appellant visited Joseph weekly and treats the boy as his son. In February 1983, appellant filed a motion for definite and specific visitation privileges with Joseph. In April 1983 the juvenile court established definitive visitation periods to be exercised by appellant with the child. On May 10, 1983, appellee moved to vacate the April 1981 custody order on the basis that the order or judgment was void. Appellee contended that since the natural father was not joined as a party to the complaint for custody, and a guardian ad litem was not appointed to represent the child's interest, the judgment was void. (The apparent reason appellee sought to vacate the previous custody and support order is that she has remarried, and her husband now seeks to adopt Joseph.)

Appellant opposed the motion to vacate on the grounds that the order as to custody and support inferentially determined the child's paternity and that appellee was equitably estopped from challenging a judgment she sought and gained benefit therefrom; i.e., support for her child from appellant. Also appellant claims the failure to join Gary Smith was waived by appellee's failure to object to his non-joinder under Civ. R. 19. Also, appellant contended a motion to vacate should not be granted because it is not a substitute for a timely appeal and it was not timely sought.

The juvenile court vacated its former judgment of April 1981 and in its decision stated:

"At the time, Daniel Fisher, appeared in Court on the request for support there had been no adjudication that he was the father of Joseph N. Smith. His name appeared as co-informant on the birth certificate as the child's father, which was certainly strong evidence that he was the father and, therefore, ought to support the child. The court made that order despite statements from the parties that he was not in fact the father. As the question of whether he is in fact the father of the child is important in determining whether his consent is necessary before the child can be adopted by the child's step-father. Therefore, the Court, in the interests of justice vacates its former judgment of support entered herein, so that the issue of paternity or non-paternity may be properly determined by the Court."

Juvenile court proceedings under R.C. 3111.17 are conducted to determine a "reputed father" for the purpose of obtaining support for a child and payment for medical expenses. A determination of a "reputed father" under R.C. 3111.17 does not convert that finding to a "natural father" under R.C. 2105.18. *In re Minor of Martin* (1977), 51 Ohio App. 2d 21 [5 O.O.3d 141].

The purpose of a paternity proceeding under R.C. Chapter 3111 is to provide a remedy for an unmarried mother of a minor child born out of wedlock, and the action may be commenced only by the unmarried mother or her legal representative. The child born out of wedlock is not a party to such action. *Johnson* v. *Norman* (1981), 66 Ohio St. 2d 186 [20 O.O.3d 196]. The child may bring an independent action for a finding of paternity incident to an illegitimate child's action for support and maintenance. *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228 [59 O.O.2d 264]. An adverse determination concerning paternity in the mother's action under R.C. Chapter 3111 does not bind the child to that adverse determination.

*Johnson* v. *Norman, supra,* at 190. Incident to the suit for maintenance and support, the court shall make a determination on the issue of paternity.

The complaint filed in this matter does not, however, pray for a determination of paternity. In the preprinted entry, the court identifies the parties as mother and father, and states the parties have agreed to the custody determination, and that the "father" Daniel Fisher assumes responsibility for support and acquires visitation privileges. The court did not expressly determine paternity. Implicit in the *Johnson* v. *Norman* decision is that responsibility for support ought not be made without resolution of the paternity question. What the parties in fact did is what is now permitted by recent legislation found in R.C. 3111.19, effective June 29, 1982:

"After an action has been brought and before judgment, the alleged father and the mother may, subject to the approval of the court, compromise the action by an agreement in which the parent and child relationship is not determined but in which a specific economic obligation is undertaken by the alleged parent in favor of the child. In reviewing the obligation undertaken by the alleged parent, the court shall consider the interest of the child, the factors set forth in division (E) of section 3111.13 of the Revised Code, and the probability of establishing the existence of a parent and child relationship in a trial."

This statutory provision permits a putative father to agree to support requirements without admitting to or being bound by a paternity determination.

The motion to vacate was filed by the appellee in order to facilitate the stepparent adoption proceedings she and her new husband planned to initiate. This action would appear to have been unnecessary. The adoption proceeding serves a different purpose than the

paternity proceeding and the parties are not the same. *In re Mancini* (1981), 2 Ohio App. 3d 124. Factual determinations in one would not preclude resolution of some of the same factual issues in the adoption proceeding. The fact that the parties agreed to the paternity determination would not preclude the probate court from making an adverse finding on who is the biological parent. The parent and child relationship between a child and the adoptive parent may be established by proof of adoption or pursuant to R.C. Chapter 3107. R.C. 3111.02.

A person who has signed the birth certificate of the child as informant as provided in R.C. 3705.14 must consent to an adoption of the minor child unless consent is not required under R.C. 3107.07. See R.C. 3107.06(F)(3). Consent is *not* required of:

"The putative father of a minor if the putative father fails to file an objection with the court, the department of public welfare, or the agency having custody of the minor as provided in division (F)(4) of section 3107.06 of the Revised Code, *or files an objection with the court, department, or agency and the court finds, after proper service of notice and hearing, that he is not the father of the minor, or that he* has willfully abandoned or failed to care for and support the minor, or abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or its placement in the home of the petitioner, whichever occurs first; [Emphasis added]." R.C. 3107.07(B).

It must be remembered that the object of an action under R.C. 3111.01 is to determine paternity, *i.e.*, who is the real father, so that he might assume his support and other paternal responsibilities. Appellant does not dispute that both parties to this appeal represented to the trial court that appellant was *not* the biological father of the child. The court ordered support and granted visitation

privileges because the parties agreed to that determination.

In *Chatman* v. *Chatman* (1977), 54 Ohio App. 2d 6 [8 O.O.3d 24], the Franklin County Court of Appeals held that although a man, after marrying a child's mother, signs a declaration of paternity indicating he is the father of such child and a birth certificate is issued reflecting this contention, he obtains no rights to custody or visitation after a decree of divorce has been entered, where it is undisputed that another is the biological father. This was the decision of the court despite the fact that appellant had established a paternal relationship with the child and provided support for the child for three years prior to the parties' divorce.

In the matter *sub judice*, the complaint did not pray for a determination of paternity, nor did the trial court *explicitly* determine that question. By agreement of the parties, appellant agreed to assume the support obligations for the child. The court entered judgment accordingly, even though the parties alerted the court that appellant was not the natural father of the child.

Appellant in his first assignment of error contends that appellee was equitably estopped from seeking the vacation of the judgment and denying its validity. The party at whose instance a judgment is rendered is not entitled to contend that the judgment is invalid. *Hopper* v. *Nicholas* (1922), 106 Ohio St. 292. In the instant case, appellee did not initiate the complaint for support. As a condition of appellee's receipt of welfare benefits for her newborn child, the welfare department became subrogated to appellee's rights to reimbursement from the "absent father" named on the welfare application. Appellee forthrightly informed the welfare department that the natural father of her child was her ex-husband Gary Smith. She indicated that appellant signed the birth certificate as "informant." The welfare

department initiated the action against appellant through the Miami County Prosecutor's office. The prosecutor determined appellant should be pursued because of the greater ease in which such prosecution could proceed. Appellant was available and had signed as informant. Appellee indicated she had no desire to pursue her brother-in-law for support, but if the welfare department chose to do so, it was their choice. At the hearing on the complaint, appellee informed the court that appellant was not the child's father. The prosecutor informed the court he would nonetheless defer to the court's judgment in the matter. The court ordered support because appellant as "informant" became father-obligor. The prosecutor stated he viewed the action as one for support, and not as one for paternity. There was no evidence that appellee knew the purpose of the action was to establish paternity. The evidence revealed that appellee possessed a limited education and merely cooperated with the welfare department in its pursuit of the "absent father." The first assignment of error is overruled.

In appellant's second assignment, he asserts the trial court erred in vacating its previous judgment concerning the custody and support of the child, without considering the "best interests" of the child.

The testimony at the motion hearing established that appellant visited with Joseph weekly and treated the child as his son. He gave gifts to him at holidays, etc. The evidence however also revealed that appellant was considerably behind in meeting the modest $10 per week support order. We agree with appellant that the trial court had a duty to determine the best interests of the child before vacating the previous judgment. The prior judgment implicitly gave appellant all those rights and duties attendant to fatherhood, *e.g.*, support duties and visitation privileges. It is clear the al-

leged natural father has no interest in his child. The appellant apparently has some (although his support record suggests some lack of concern). Nonetheless, it is difficult to evaluate the harm that is caused a small child when his "daddy" suddenly loses that status, and another is substituted in his place. Weighed against these practical considerations is the uncontroverted evidence that appellant is not the father of the child by his own admission. Appellant has no standing to assert the best interests of the child. This is not a custody determination. Were it one, and appellant had *admitted* paternity, he would have standing to contest custody. *In re Wright* (1977), 52 Ohio Misc. 4 [6 O.O.3d 31]. This is a paternity determination. Appellant admits he is not the father, and the trial court should be free to correct any judgment which implicitly so finds.

Civ. R. 60(B)(5) reflects the inherent power of a court to relieve a party from the unjust operation of a judgment. *State, ex rel. Gyurcsik,* v. *Angelotta* (1977), 50 Ohio St. 2d 345 [4 O.O.3d 482]. Implicit in such a finding is the exercise of judicious discretion by the trial court. Absent an abuse of that discretion, a reviewing court may not disturb the trial court's decision. The second assignment is overruled.

In appellant's last assignment of error, appellant asserts the juvenile court abused its discretion in vacating the prior judgment because the vacation was against the manifest weight of the evidence. The court vacated its previous order because the order was unjust. Despite the undisputed evidence that appellant was not the child's father, the court implicitly imposed paternal obligations upon appellant. These obligations were such that if not corrected would create in the mind of the child that his father was Daniel Fisher when the trial court had undisputed evidence to the contrary. The trial court acted to correct

its mistake when the motion to vacate was brought to his attention. Under the new Uniform Parentage Act, the trial court could order that all interested parties be made a party to a paternity determination, to wit, the child, the alleged biological parent, the putative father, and the mother. See R.C. 3111.07. If the alleged biological parent denies paternity, blood tests and other evidence corroborative of his paternity would be admitted to determine the child's father.

Under the Uniform Parentage Act, the "informant" on the birth certificate is presumed to be the natural father. R.C. 3111.03(A)(4). A presumption that arises under this section can only be rebutted by clear and convincing evidence. Blood testing which eliminates the "informant" as the father of the child is such evidence.

The judgment of the trial court to vacate the judgment was not against the manifest weight of the evidence. There was some reliable, substantial, and probative evidence to support the trial court's determination that its previous judgment would produce an unjust result for the mother, the child, and the appellant.

Appellant contends the motion to vacate was not filed in a timely manner. Civ. R. 60(B) requires that the motion be filed within a reasonable time after the judgment is entered which is sought to be vacated. Appellee testified she sought legal counsel to delete appellant's name from the child's birth certificate in early 1982. She even sought the consent of her ex-husband to such amendment. As problems between appellant and appellee escalated in relation to the child's visitation, appellant filed a motion for specific and definite visitation periods. Appellee attempted to introduce evidence that appellant was not the biological father. After the court granted appellant's request for definite visitation privileges, this action was initiated at the request of the welfare department.

The decision to entertain a Rule 60(B) motion necessarily involves the trial court determination that it has been timely sought. That determination involves discretion on the trial court's behalf. *Mount Olive Baptist Church* v. *Pipkins Paints* (1979), 64 Ohio App. 2d 285 [18 O.O.3d 319]. In light of the evidence presented, we perceive no abuse of discretion in determining that the motion was timely filed. The third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS and WILSON, JJ., concur.