[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 211 
This is a consolidated appeal from judgments entered by the Meigs County Court of Common Pleas, General Division, and the Meigs County Court of Common Pleas, Juvenile Division. The juvenile court, in case No. 408, granted the motion of Pauline Gay LaBonte, defendant below and appellee herein, to dismiss the complaint of Clell LaBonte, Sr., plaintiff below and appellant herein, seeking a determination of paternity pursuant to R.C. Chapter 3111, on the ground that the doctrine of res judicata barred such claim for relief. In case No. 415, the common pleas court granted the Civ.R. 60(B) motion for relief from judgment filed by Clell LaBonte, Sr., defendant below and appellee herein, and opposed by Pauline Gay LaBonte, plaintiff below and appellant herein.
In case No. 408, Clell LaBonte, Sr. assigns the following errors:
"I. The juvenile trial court erred in dismissing appellant's cause of action to determine paternity.
"II. Appellant was denied his right to due process afforded him by Article I § 16 of the Ohio Constitution, the5th Amendment to the United States Constitution and the14th Amendment to the United States Constitution by the *Page 212 
filing of his paternity action pursuant to R.C. Chapter 3111 being subsequently dismissed by the trial court."
In case No. 415, Pauline Gay LaBonte assigns the following errors:
"1. Rule 60(B) is not a proper basis for relief in this cause.
"2. The Court erred in its finding that no judicial determination of any parentage and/or father and son relationships between Defendant, Clell LaBonte, Sr. and the minor child, Jean-Paul LaBonte, was made during the proceedings in question."
On January 8, 1987, Pauline Gay LaBonte filed a complaint in the General Division of the Meigs County Court of Common Pleas which averred that the parties herein previously entered into a common-law marriage in 1971 and from such union, they had two children, who were both adults at the time the complaint was filed. The complaint further averred that the parties entered into a second common-law marriage on January 1, 1974, and that such union resulted in the birth of Jean-Paul LaBonte, who was born on July 5, 1973. Pauline Gay LaBonte's complaint prayed for a divorce from Clell LaBonte, Sr. on the basis that he had been guilty of gross neglect of duty and extreme cruelty. On March 10, 1987, Clell LaBonte, Sr. filed a motion for leave to file an answer to the divorce complaint.
On March 11, 1987, a hearing was held on the divorce complaint at which the following pertinent events occurred. The trial court initially granted Clell LaBonte, Sr.'s motion for leave to file an answer to the divorce complaint. Subsequently, Clell LaBonte, Sr. testified that the child, Jean-Paul LaBonte, was not his; that he did not have a child as a result of the parties' second common-law marriage; that he had supported the child, including providing health and life insurance for the child; and that he had tried to raise the child as his own.
After a recess, the following exchange occurred:
"THE COURT: We are reconvening in the case of Pauline LaBonte versus Clell LaBonte. Both parties are present in Court, together with counsel.
"The Court has been informed that subsequent to the last recess, the parties have reached an amicable agreement converting this matter to an uncontested divorce and a property settlement has been reached.
"Do I understand correctly that we have reached a property settlement in this matter?
"MR. CROW: Yes, Your Honor.
"MR. MULLEN: Yes, Your Honor.
"THE COURT: And we also have an agreement relating to the child. *Page 213 
"MR. CROW: Yes, Your Honor.
"THE COURT: Perhaps if counsel for the Plaintiff would state for the record what the agreement is and counsel for the Defendant will have an opportunity to respond, make any changes that he feels necessary.
"Mr. Crow?
"MR. CROW: Okay. First of all, Your Honor, the Answer that has yet (pause) not been filed, will not be filed.
"THE COURT: Fine.
"MR. CROW: It will go as an uncontested divorce. The Plaintiff will be granted a divorce. She will be awarded custody of the parties' one minor child. Child support will be three hundred (300.00) per month until the child reaches the age of eighteen, or until the child graduates from high school, whichever is later.
"The Defendant will pay to the Plaintiff an additional one hundred dollars ($100.00) which will go to July 5th, 1991, which will be when the youngest child reaches the age of eighteen."
Clell LaBonte, Sr.'s counsel was later given an opportunity to respond. Neither counsel explicitly stated that the agreement reached off the record contained an express determination that Clell LaBonte, Sr. was the natural father of Jean-Paul LaBonte although Pauline Gay LaBonte's counsel referred to him as the "parties' one minor child."
On June 26, 1987, the trial court entered a judgment granting a divorce to Pauline Gay LaBonte and further providing, in pertinent part, as follows:
"Upon due consideration thereof, the court finds ... that the parties were married as alleged in the Complaint and the Court found one child was born, to-wit: Jean-Paul LaBonte, DOB July 5, 1973.
"* * *
"It is further ordered, adjudged and decreed that the care, custody, and control of the minor child be and is hereby awarded to the Plaintiff and the Defendant will have reasonable visitation rights with said child.
"It is further ordered, adjudged and decreed that the Defendant shall pay the sum of $300.00 per month, plus poundage, through the Meigs County Bureau of Support, Pomeroy, Ohio, as and for child support until said child, Jean-Paul LaBonte, graduates from high school or until July 5, 1991, whichever is later and shall maintain the present health insurance coverage for the minor child, Jean-Paul LaBonte, until such time as he no longer has an obligation of support for said child.
"* * * *Page 214 
"It is further ordered, adjudged and decreed that the Defendant shall pay the insurance premiums on a life insurance policy on the minor child of the parties, Jean-Paul LaBonte, until said child reaches the age of eighteen (18) and it is ordered that the beneficiaries on said policy remain the same, to-wit: one-half of the proceeds to Plaintiff and one-half of the proceeds to the Defendant.
"It is further ordered, adjudged and decreed that the Defendant shall maintain and keep in full force and effect the life insurance policy or policies, under which he is presently insured. The Defendant is to execute and file with the insurance company appropriate Change of Beneficiary Forms designating Jean-Paul LaBonte as beneficiary or in the alternative the Plaintiff, Pauline Gay LaBonte, as beneficiary. Said policy or policies shall be kept in full force and effect until July 5, 1991."
The judgment entry was signed and approved by Pauline Gay LaBonte's counsel, but was not signed by Clell LaBonte, Sr.'s counsel. On July 13, 1987, Clell LaBonte, Sr. filed a complaint in the Juvenile Division of the Meigs County Court of Common Pleas which averred that Pauline Gay LaBonte was the natural mother of Jean-Paul LaBonte, whose date of birth was July 5, 1973; that Clell LaBonte, Sr. was not the natural biological father of the child; and that he was not married to Pauline Gay LaBonte when the child was either conceived or born. The complaint was filed pursuant to R.C. Chapter 3111 and prayed for, inter alia, a judgment disestablishing the existence of any and all father and child relationships between Clell LaBonte, Sr. and Jean-Paul LaBonte. On the same date, Clell LaBonte, Sr. filed a motion requesting genetic testing of the parties and the minor child.
On July 27, 1987, Pauline Gay LaBonte filed a motion to dismiss the complaint filed by Clell LaBonte, Sr. on the basis that the Meigs County Court of Common Pleas, General Division's June 26, 1987 divorce entry was res judicata as to the paternity issue. On November 16, 1987, the juvenile court entered judgment granting Pauline Gay LaBonte's motion and dismissed the R.C. Chapter 3111 complaint of Clell LaBonte, Sr.
On March 15, 1988, Clell LaBonte, Sr. filed a Civ.R. 60(B) motion in the general division of the common pleas court for relief from the June 26, 1987 divorce entry, asserting Civ.R. 60(B)(1), (3), and (5) as the applicable grounds. An affidavit of Clell LaBonte, Sr.'s counsel was attached to the Civ.R. 60(B) motion for relief from judgment which stated, in pertinent part, as follows.
During the March 11, 1987 divorce hearing, counsel for both parties requested a recess to determine what matters could be settled between the *Page 215 
parties and stipulated to the court. During the recess, the parties and their counsel agreed that there would be no adjudication concerning a parent-child relationship between Clell LaBonte, Sr. and Jean-Paul LaBonte and that a paternity action would be filed by Clell LaBonte, Sr. to determine such issue. Following the recess, the court was informed that the parties were ready to stipulate certain facts and the court subsequently heard and accepted all stipulations.
There was no adjudication by the court as to the existence of any parent and child relationship between Clell LaBonte, Jr. and Jean-Paul LaBonte. The journal entry prepared by Pauline Gay LaBonte's counsel and filed on June 26, 1987 was inaccurate, did not reflect the decision of the court, and was filed without Clell LaBonte, Sr.'s counsel's approval when he was out of state. Clell LaBonte, Sr. and his attorney relied to their detriment upon their agreement with Pauline Gay LaBonte and her attorney, and the misrepresentation regarding the adjudication of the paternity issue and the lack of a parent and child relationship.
On April 5, 1988, Pauline Gay LaBonte filed a memorandum contra Clell LaBonte, Sr.'s motion for relief from judgment attaching thereto an affidavit of her trial counsel in which he stated, inter alia, that the issue of paternity was decided by the trial court and that there was no misrepresentation on his part. On April 18, 1988, the trial court filed an entry granting Clell LaBonte, Sr.'s motion for relief from judgment, stating that the judgment entry of June 26, 1987 was not approved by Clell LaBonte's counsel nor submitted to him for approval and that there was no judicial determination of a father and son relationship between Clell LaBonte, Sr. and the minor child.
Clell LaBonte, Sr.'s first assignment of error asserts that the juvenile court erred in dismissing his complaint to determine paternity. He argues that the June 26, 1987 divorce entry was not res judicata as to the issue of paternity.
An existing final judgment or decree between the parties to litigation is conclusive as to all claims which were litigated in a first lawsuit. Rogers v. Whitehall (1986), 25 Ohio St.3d 67,69, 25 OBR 89, 90-91, 494 N.E.2d 1387, 1388-1389. The Ohio Supreme Court has defined res judicata and collateral estoppel as follows:
"The doctrine of res judicata involves two basic concepts.Norwood v. McDonald (1943), 142 Ohio St. 299 [27 O.O. 240],52 N.E.2d 67. First, it refers to the effect a judgment in a prior action has in a second action based upon the same cause of action. The Restatement of the Law, Judgments, Section *Page 216 
45, uses the terms `merger' and `bar.' If the plaintiff in the prior action is successful, the entire cause of action is `merged' in the judgment. The merger means that a successful plaintiff cannot recover again on the same cause of action, although he may maintain an action to enforce the judgment. If the defendant is successful in the prior action, the plaintiff is `barred' from suing, in a subsequent action, on the same cause of action. The bar aspect of the doctrine of res judicata
is sometimes called `estoppel by judgment.' Restatement of the Law, Judgments, Section 45, comment (b).
"The second aspect of the doctrine of res judicata is `collateral estoppel.' While the merger and bar aspects ofres judicata have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, comment (c), and Section 68(2); Cromwell v. County of Sac (1876), 94 U.S. 351
[24 L.Ed. 195]. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Whitehead v. Gen. Tel. Co. (1969),20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437-438, 254 N.E.2d 10,12; McCrory v. Children's Hospital (1986), 28 Ohio App.3d 49,51-52, 28 OBR 61, 62-63, 501 N.E.2d 1238, 1241-1242.
Therefore, in order to assert collateral estoppel successfully, a party must plead and prove the following elements: (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit. Monahanv. Eagle Picher Industries, Inc. (1984), 21 Ohio App.3d 179, 21 OBR 191, 486 N.E.2d 1165; see, also, Goodson v. McDonough PowerEquip., Inc. (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978.
The doctrine of res judicata can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111. Gilbraith v. Hixson (1987), 32 Ohio St.3d 127,512 N.E.2d 956, syllabus. Where there is no prior judgment of paternity, the doctrine of *Page 217 
res judicata does not act as a bar to a legitimation action.Collett v. Cogar (1988), 35 Ohio St.3d 114, 518 N.E.2d 1202, syllabus.
Under R.C. 3111.04(A), an "action to determine the existence or nonexistence of the father and child relationship" may be commenced by any one of several specified individuals, including "* * * a man alleged * * * to be the child's father * * *."Gilbraith, supra, 32 Ohio St.3d at 129, 512 N.E.2d at 959. The "parent and child relationship" means the legal relationship that exists between a child and the child's natural or adoptive parents and includes the father and child relationship. R.C.3111.01(A). Pursuant to R.C. 3111.03(A), certain presumptions as to paternity may arise; however, these presumptions are generally rebuttable. R.C. 3111.03(B).
The June 26, 1987 divorce entry relied upon by the juvenile court in granting Pauline Gay LaBonte's motion to dismiss the paternity action did not state that Jean-Paul LaBonte was born as issue of the marriage but merely stated "that the parties were married as alleged in the Complaint and the Court found one child was born." Such entry also referred to Clell LaBonte, Sr.'s obligation to pay life insurance on the "minor child of the parties," but never expressly indicated the existence of a "parent and child relationship" as such term is defined in R.C.3111.01(A), i.e., there never was an express finding that Clell LaBonte, Sr. was either the natural or adoptive father of the minor child.
Cases addressing the issue of the finality of a finding of paternity in a divorce decree have generally interpreted the finding in a divorce decree that the child "was born as issue of the marriage." In re Mancini (1981), 2 Ohio App.3d 124, 2 OBR 138, 440 N.E.2d 1232; Gatt v. Gedeon (1984), 20 Ohio App.3d 285,286-287, 20 OBR 376, 377-378, 485 N.E.2d 1059, 1060-1062. Indeed, the finding that the child "was born as the issue of this marriage" amounts to no more than a finding that he was born to the wife during the marriage. Mancini, supra,2 Ohio App.3d at 126, 2 OBR at 140-141, 440 N.E.2d at 1234; Gatt, supra,20 Ohio App.3d at 286-287, 20 OBR at 377-378, 485 N.E.2d at 1060-1062;A.B. v. C.D. (1971), 150 Ind. App. 535, 277 N.E.2d 599. As noted previously, the divorce decree herein does not even contain the finding that the child was born as issue of the marriage.
The juvenile court entry dismissing the paternity complaint relied upon the divorce entry's statement referring to Jean-Paul LaBonte as a "minor child of the parties" in ordering Clell LaBonte, Sr. to pay life insurance premiums for the child and further relied upon the divorce entry's ordering of child support and reasonable visitation. However, the mere placement of support payments *Page 218 
upon an alleged father is not tantamount to a finding of paternity. R.C. 3111.19 provides as follows:
"After an action has been brought and before judgment, the alleged father and the mother may, subject to the approval of the court, compromise the action by an agreement in which the parent and child relationship is not determined but in which a specific economic obligation is undertaken by the alleged parent in favor of the child. In reviewing the obligation undertaken by the alleged parent, the court shall consider the interest of the child, the factors set forth in division (E) of section 3111.13
of the Revised Code, and the probability of establishing the existence of a parent and child relationship in a trial."
This statutory provision permits a putative father to agree to support requirements without admitting to or being bound by a paternity determination. In re Smith (1984), 16 Ohio App.3d 75,77, 16 OBR 79, 82, 474 N.E.2d 632, 635. Moreover, the mere statement that Jean-Paul LaBonte was the "minor child of the parties" was made in the context of ordering the putative father to pay life insurance premiums and, in our view, is insufficient to support the finding of res judicata by the juvenile court in dismissing the complaint herein. A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum. In re Adoption of Gibson (1986),23 Ohio St.3d 170, 173, 23 OBR 336, 338, 492 N.E.2d 146, 148;State, ex rel. Hanley, v. Roberts (1985), 17 Ohio St.3d 1, 4, 17
OBR 1, 3-4, 476 N.E.2d 1019, 1021; Schenley v. Kauth (1953),160 Ohio St. 109, 51 O.O. 30, 133 N.E.2d 625, paragraph one of the syllabus. The June 26, 1987 divorce decree herein fails to explicitly find that Jean-Paul LaBonte was either the natural or adoptive child of Clell LaBonte, Sr. Accordingly, the juvenile court erred in dismissing the putative father's complaint. Clell LaBonte, Sr.'s first assignment of error is sustained.
Clell LaBonte, Sr.'s second assignment of error asserts that he was denied his constitutional right to due process by the juvenile court dismissal of his paternity complaint. He argues that the juvenile court failed to order a pretrial hearing.
R.C. 3111.11 provides as follows:
"If the person against whom an action is brought pursuant to sections 3111.01 to 3111.19 of the Revised Code does not admit in his answer the existence or nonexistence of the father and child relationship, the court shall hold a pretrial hearing, in accordance with the Civil Rules, at a time set by the court. At the pretrial hearing, the court shall notify each party to the action that the party may file a motion requesting the court to order the child's *Page 219 
mother, the alleged father, and any other person who is a defendant in the action to submit to genetic tests and, if applicable, to the appropriate tests referred to in section3111.10 of the Revised Code. When the court determines that all pretrial matters have been completed, the action shall be set for trial."
The juvenile court herein was not required to order a pretrial hearing herein in that Pauline Gay LaBonte had filed a motion, based upon res judicata, which it could properly rule upon before ordering a pretrial. Accordingly, the juvenile court's failure to order a pretrial hearing did not violate the putative father's constitutional right to due process. Clell LaBonte, Sr.'s second assignment of error is overruled.
Pauline Gay LaBonte's first assignment of error asserts that Civ.R. 60(B) was not a proper basis for relief in case No. 415. Civ.R. 60(B) provides, in pertinent part, as follows:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."
In order to prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken. GTEAutomatic Electric v. ARC Industries (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus; Doev. Trumbull Cty. Children Services Bd. (1986), 28 Ohio St.3d 128, 28 OBR 225, 502 N.E.2d 605; Sand v. Marbex (1987), Scioto App. No. 1658, unreported, at 7, 1987 WL 26264. *Page 220 
One of the grounds specified in the Civ.R. 60(B) motion for relief from judgment was fraud pursuant to Civ.R. 60(B)(3). A fraud claim asserts a misrepresentation that is material to a transaction and induces reasonable reliance. Burr v. Stark Cty.Bd. of Commrs. (1986), 23 Ohio St.3d 69, 23 OBR 200,491 N.E.2d 1101, paragraph two of the syllabus; Friedland v. Lipman (1980),68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456. A litigation participant's false statements may justify relief from a resulting judgment, pursuant to Civ.R. 60(B)(3). Mitchell v.Whitaker (1986), 33 Ohio App.3d 170, 172, 514 N.E.2d 937, 939.
While we would emphasize that we do not reach or determine the validity of such claim of purported fraud, the affidavit of Clell LaBonte, Sr.'s counsel, attached to the Civ.R. 60(B) motion, stated operative facts averring fraud on the part of Pauline Gay LaBonte's trial counsel which the trial court could consider in granting the Civ.R. 60(B) motion to vacate. A determination purporting to address the matter of parentage may be vacated pursuant to a recognized legal remedy such as that set forth in Civ.R. 60(B). Gilbraith, supra,32 Ohio St.3d at 131, 512 N.E.2d at 961. Moreover, a court order, by agreement of the parties, awarding custody of a child to the natural mother and giving support duties and visitation privileges to the putative father ought not be made without resolution of the paternity question, and vacation of such order on the basis that it is unjust is not an abuse of the court's discretion. Smith,supra.
A trial court has considerable discretion in deciding whether to grant a motion for relief from judgment under Civ.R. 60(B).Rowland v. Finkel (1987), 33 Ohio App.3d 77, 514 N.E.2d 949. An abuse of discretion is more than an error of law or judgment; rather, it implies an attitude on the part of a trial court that is unreasonable, arbitrary, or unconscionable. Warner v. WasteManagement, Inc. (1988), 36 Ohio St.3d 91, 99, 521 N.E.2d 1091,1098; Ojalvo v. Bd. of Trustees of Ohio State Univ. (1984),12 Ohio St.3d 230, 232-233, 12 OBR 313, 314-316, 466 N.E.2d 875,876-878. Based upon the Civ.R. 60(B) material presented to the trial court and our prior determination that its June 26, 1987 divorce entry did not contain a finding that Clell LaBonte, Sr. was the natural or adoptive father of Jean-Paul LaBonte, we find that the court did not abuse its discretion in granting the Civ.R. 60(B) motion for relief from judgment. Pauline Gay LaBonte's first assignment of error is overruled.
Pauline Gay LaBonte's second assignment of error asserts that the trial court erred in finding that no judicial determination of a father and child relationship was made during the proceedings in question. As we noted *Page 221 
previously in our disposition of Clell LaBonte, Sr.'s first assignment of error, the divorce entry contained no express determination of paternity. Moreover, the transcript of the hearing does not contain any express statement or stipulation that Clell LaBonte, Sr. was either the natural or adoptive father of the minor child. Pauline Gay LaBonte's second assignment of error is overruled.
For the foregoing reasons, the judgment in case No. 408 dismissing the parentage complaint is reversed and remanded for proceedings consistent with this opinion, and the judgment in case No. 415 granting the motion for relief from judgment is affirmed.[1]
Judgment reversedand cause remanded in case No. 408.
Judgment affirmed in case No. 415.
GREY, P.J., and ABELE, J., concur.
[1] R.C. 3111.06(A) provides as follows:
"The juvenile court has original jurisdiction of any action authorized under sections 3111.01 to 3111.19 of the Revised Code. An action may be brought under those sections in the juvenile court of the county in which the child, the child's mother, or the alleged father resides or is found, or, if the alleged father is deceased, of the county in which proceedings for the probate of his estate have been or can be commenced, or of the county in which the child is being provided support by the department of human services of that county. If an action for divorce, dissolution, or alimony has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties."
Accordingly, both the general division and juvenile division herein can decide the paternity issue. See, also, Gatt v.Gedeon (1984), 20 Ohio App.3d 285, 20 OBR 376, 485 N.E.2d 1059. However, in the interests of justice, it might be preferable for the general division herein to decide such issue in that it is more familiar with the parties and had made the child support order herein. See, e.g., Smith, supra. *Page 222