John Hawn appeals the Scioto County Court of Common Pleas' dismissal of his action to enjoin George R. Pleasant and June Nakama ("the Pleasants") from interfering with Hawn's use of the road which forks north off Jacquay's Run township road ("the north fork"). Hawn asserts that, at the bench trial, he established his right to use the north fork by: (1) collateral estoppel, (2) common law dedication, (3) prescription, or (4) necessity. We disagree, because the trial court's decision that Hawn failed to establish his right to use the north fork through any of these means is supported by competent, credible evidence. Hawn argues that the trial court prejudicially erred by excluding excluding admissible evidence. We agree in part, because the trial court excluded admissible evidence. However, we find that the trial court's error was harmless because the court probably would have reached the same decision even if it had admitted the evidence. Accordingly, we affirm the judgment of the trial court.
 I.
In January 1996, Hawn purchased an eighty-five acre plot of real estate adjacent to the Pleasants' property. The Pleasants access their property from Jacquay's Run, a township road commencing at State Route 73, dedicated to the township for .85 miles, but only maintained for approximately .71 miles. After the maintained portion of Jacquay's Run, the road continues across the Pleasants' property, then forks to the north and to the west. The north fork provides access to Hawn's property, which lies approximately one mile from State Route 73. Neither Hawn's nor the Pleasants' deed provides Hawn with an easement to use the road.
Hawn, a real estate broker familiar with the property through his purchase and prior listing of the property, approached the Pleasants in May 1996, seeking permission to cross their property. The Pleasants refused, posting "no trespassing" signs beside the previously posted "private property" signs at the edge of their property. asserting that he had a long-established easement from the end of Jacquay's Run, across the Pleasants' property, and continuing up the north fork to his property. Hawn requested that the court enjoin the Pleasants from interfering with his use of the north fork. Hawn asserted that Stahl v. Prose (1885), Scioto County Court of Common Pleas Case No. 6857, established the existence of a dedicated township road or an easement on the north fork between his and the Pleasants' predecessors in title, and therefore, that collateral estoppel barred the Pleasants from denying him access to the north fork. In Stahl, Stahl, Hawn's predecessor in title, sought damages arising from Prose's interference with Stahl's use of Stahl's Road, a dedicated township road commencing at the Stahl/Prose property line, and running through Prose's property "to the fork at the north fork of Jackey's Run." The trial court awarded Stahl the damages for Prose's interference with Stahl's Road. Alternatively, Hawn argued that he and his predecessors in title established a prescriptive easement across the Pleasants property.
At trial, the testimony showed that, in 1956, landowners along Jacquay's Run petitioned the Union Township Trustees to dedicate and maintain it for public use. Hawn's predecessors in title did not dedicate any portion of their property for Jacquay's Run, nor did the Pleasants dedicate the north fork to the township. The township never vacated any portion of the township. The township never vacated any portion of Jacquay's Run. Hawn produced no documentation that any portion of Jacquay's Run, including the north fork, was ever known as Stahl's Road or that any persons or the public had traveled Stahl's Road.
Aerial photographs and township maps show the existence of the north fork running to Hawn's property. Hawn obtained aerial photographs taken in 1939, 1957, 1974 from the United States Department of Agriculture ("USDA"), (2) photocopies of photographs taken in 1967 and 1981, stored in the Scioto County Soil Conservation Department ("SCSCD"), and (3) an aerial photograph taken in 1978 from the James Sewell Corporation and the Meade Company. Hawn testified that the photographs showed Jacquay's Run forking north and west after crossing the Pleasants' property, with the north fork continuing to his property.
County maps prior to and after the 1956 dedication of Jacquay's Run show some form of road continuing from the dedicated portion and forking north and west. All of the maps prior to 1997 record the north fork as an "other road," other than a state, county, or township road. In 1997, county engineers removed all lines representing "other roads" from county maps to eliminate clutter. Post-1997 maps depict no roads veering north or west from Jacquay's Run.
Hawn presented two experts to support his claim that Jacquay's Run continues to the north fork and his property. Les Ott, a forester and surveyor, reviewed the aerial photographs, maps, and view of the property. Ott opined that some form of a road exists from Jacquay's Run to Hawn's property. Gilbert Smith, also a surveyor, examined Hawn's property and compared the survey contained in Stahl with the current surveys and the path of the road Hawn claims. Smith found three roads beds in the general area surveyed in Stahl, but could not determine which, if any, of the three road beds was Stahl's Road, whether the dedicated road in Stahl was the current Jacquay's Run, or whether Jacquay's Run currently runs the same course as in the previous century. Neither Ott nor Smith could form an opinion as to whether the current north fork was a trail, logging road, pathway or whether the north fork was a public or private road.
Hawn hired surveyors to draft a preliminary tract of a road from Jacquay's Run to Hawn's property, based upon the survey inStahl. The surveyors completed a course for the road, but were unable to locate the road bed from Stahl on Hawn's property or to determine the Stahl's Road's location.
Donald Pertuset testified that in the 1940's and 1950's, he entered Hawn's property from Jacquay's Run across a logging road to cut and remove timber. Frank Pertuset, Donald's son, hauled gravel to build and repair logging roads in the area during the 1970's so that Charles Whitaker, Hawn's predecessor in title, could cut and remove timber for himself and the Pleasants. Stanley and William Kremin timbered wood on the property when a family member owned Hawn's land in the sixties, but were unaware that Jacquay's Run continued to Hawn's property. Hawn testified that he crossed the Pleasants property numerous times to access the property as early as 1966.
At the close of Hawn's case, the trial court reviewed the ninety-three exhibits Hawn proffered. Upon the Pleasants' objection, the trial court determined that two letters containing Ott's written opinion merely offered cumulative evidence, and therefore the trial court excluded them, pursuant to Evid.R. 403. The court also excluded the two maps Hawn himself prepared, which he contended depicted the path of the north fork from Jacquay's Run to his property. However, the trial court admitted a joint exhibit map drawn during the trial which depicted Hawn's belief as to the location of the north fork. The Pleasants also objected to all of Hawn's aerial photographs, arguing that Hawn failed to properly authenticate the documents because they were not certified copies of public records as required by Evid.R. 902(4). The trial court sustained the objection, reasoning that Hawn failed to properly authenticate the photographs and that the photographs were inadmissible hearsay.
The Pleasants moved for a directed verdict. The trial court granted the motion. In its findings of fact and conclusions of law, the trial court found that Hawn failed to present competent, credible evidence of a long-established easement and roadway on the north fork of Jacquay's Run as the subject of a prior Scioto County Court case.
The court further found that Hawn failed to prove common law dedication because Hawn presented no evidence of an intent to dedicate the north fork, an actual offer on the part of the landowner, or acceptance of the offer. The court also found that Hawn failed to prove an implied dedication because Hawn failed to prove some positive or affirmative action to indicate that the township took over the north fork. Further, the trial court found that Hawn failed to prove that the public used and maintained the north fork for more than twenty-one years, and therefore Hawn could not invoke a conclusive presumption of common law dedication and acceptance as a public road. Finally, the trial court found that Hawn did not prove that but for the north fork his land would be landlocked.
Hawn appeals the judgment of the trial court, asserting the following assignments of error for our review:
 I. PLAINTIFF STATES THAT THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO HIM WHEN IT SUSTAINED DEFENDANTS' CIVIL RULE 41(B)(2) MOTION AND DISMISSED PLAINTIFF'S COMPLAINT.
 II. PLAINTIFF STATES THAT THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO PLAINTIFF WHEN IT REFUSED TO ADMIT 14 EXHIBITS OFFERED BY PLAINTIFF INTO EVIDENCE.
 III.
In his first assignment of error, Hawn argues that the trial court erred in dismissing his action because he proved that an easement across the Pleasants' property had been established by: (1) collateral estoppel, (2) dedication, (3) prescription, or (4) necessity.
Pursuant to Civ.R. 41(B)(2), a defendant may move for dismissal at the close of the plaintiff's case because the plaintiff failed to show a right to relief. A Civ.R. 41(B)(2) dismissal is used in non-jury actions and requires the trial court and reviewing court to apply different tests. CentralMotors Corp. v. Pepper Pike (1979), 63 Ohio App.2d 34, 48. The rule specifically provides that the trial court may consider both the law and the facts. Under Civ.R. 41, the trial judge, as the trier of fact, actually determines whether the plaintiff proved the necessary facts by the necessary quantum of proof. See L.W. Shoemaker, M.D., Inc. v. Connor (1982), 81 Ohio App.3d 748; Central Motors, supra. Even if the plaintiff has presented a prima facie case, dismissal is still appropriate where the trial court determines that the necessary quantum of proof makes it clear that plaintiff will not prevail. Id. However, if the judge finds that the plaintiff has proven the relevant facts by the necessary quantum of proof, the court must deny this motion and the defendant must put on evidence. CentralMotors Corp. at 48.
On appellate review, to the extent that the trial court's determination rests upon findings of fact, those findings will not be overturned unless they are against the manifest weight of the evidence. C.E. Morris Cc. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. An appellate court will not reverse the decision of a trial court for being against the manifest weight of the evidence if the decision of the trial court is supported by competent, credible evidence. Id. at 280. To the extent that the trial court's decision is based upon a question of law, an appellate court reviews the trial court's judgment de novo.
 A.
First, Hawn argues that the trial court erred in finding that he failed to prove that the north fork of Jacquay's Run was the subject of Stahl. Hawn asserts that he presented competent, credible evidence that the issue adjudicated in Stahl was identical to the issue in his present action.
Collateral estoppel precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based upon a different cause of action. Restatement of the Law, Judgments, Section 45, comment (c), and Section 68 (2); Cromwell v. Countyof Sac (1876), 94 U.S. 351. To assert collateral estoppel, a party must prove that: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) a final judgment on the merits in the previous case was entered after a full and fair opportunity to litigate the issue; (3) the issue was admitted or actually tried and decided and necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit.LaBonte v. LaBonte (1988), 61 Ohio App.3d 209, 216.
Stahl determined the respective rights of Hawn's and the Pleasants' predecessors in title to Stahl's Road, a dedicated township road. Hawn produced no evidence (1) that Stahl's Road followed the same course as the north fork of Jacquay's Run, (2) where Stahl's Road ran, (3) that Jacquay's Run and Stahl's Road were the same or part of one another, or (4) where Jacquay's Run commenced and ended when Stahl was tried. Surveyors could not locate the road bed for Stahl's Road or determine its location. County maps depicted the north fork as a road other than a township, county, or state road. However, because Stahl's Road was dedicated to the township, county maps depicting Stahl's Road would have labeled it as a township road. The testimony showed that the north fork and other roads on the Pleasant property, were built and maintained for the limited purpose of removing timber.
We find competent, credible evidence to support the trial court's finding that Hawn failed to prove that Stahl's Road was the north fork. Therefore, we find that the trial court's finding that Hawn failed to prove that the issues inStahl and the present action were identical is supported by the manifest weight of the evidence. As such, the trial court properly found that Hawn could not enforce the judgment rendered in Stahl against the Pleasants and preclude them from contesting Hawn's rights to the north fork. Thus, the trial court did not err in dismissing Hawn's claim on this issue.
 B.
Hawn next asserts that he proved that the Pleasants' made a common law dedication of the road to the public. To show a common law dedication of real property, the proponent asserting the dedication occurred must show: (1) the existence of an intention on the part of the owner to make such dedication; (2) an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and (3) the acceptance of such offer by or on behalf of the public.Vermilion v. Dickason (1976), 53 Ohio App.2d 138; Doud v.Cincinnati (1949), 152 Ohio St. 132; Bachtel v. Strickland
(Nov. 17, 1987), Jackson App. No. 550, unreported; McDermott, Ohio Real Property Law and Practice (1985), Section 25-21A. The dedication may be either express or, when it arises by operation of law from the acts of the owner, implied.Hicksville v. Lantz (1950), 153 Ohio St. 421, paragraph two of the syllabus; State, ex rel. Litterst v. Smith (1950), 87 Ohio App. 513.
Acceptance also may be express or implied. To imply acceptance by the public of a street or road dedication, the public authority must indicate via some positive or affirmative action, such as improving the street or road, that it has taken control or direction over the property. State ex rel. Fitzbumv. Turinsky (1961), 172 Ohio St. 148, 153; Bachtel v.Strickland, supra. Mere use of the roads by the public is insufficient. Fitzbum, supra, at paragraph one of the syllabus.
A dedication and acceptance of private property for a public use may also result from the public's use of the property with the silent acquiescence of the owner for a period of time sufficient to warrant an inference of an intent to make a dedication and to constitute such acceptance. Doud, supra, at paragraph one of the syllabus. Roads may become public roads by virtue of continued public use for more than twenty-one years and maintenance of the surfaces and bridges during such period by township and county officials. 1965 Ohio Atty.Gen.Ops. No. 015, p. 2-40; Penquite v. Lawrence (1860), 11 Ohio St. 274;Pennsylvania R.R. Co. v. City of Girard (6th Cir. 1954),210 F.2d 437. Such use and maintenance results in a conclusive presumption of common law dedication and acceptance and the county engineer is entitled to designate the road as a public road on the county engineer's map. Id.; Penquite; PennsylvaniaR.R. Co.
Hawn presented no evidence of an express intent or offering on the part of the Pleasants to dedicate the north fork real estate as part of Jacquay's Run. Indeed, the Pleasants dedicated a specific portion of their property for Jacquay's Run and posted "no trespassing" signs across the rest of their property. Therefore, we find no evidence of express dedication.
We also find no evidence of an implied dedication because the township never made any attempt to take control of the north fork. Pertuset, a private citizen, testified that he built and maintained the north fork by hauling gravel across it. Therefore, we find competent, credible evidence to support the trial court's finding that Hawn did not acquire a right to use the north fork via a common law dedication. Therefore, the trial court's finding was not against the manifest weight of the evidence and the trial court did not err in dismissing Hawn's claim on this issue.
 C.
Hawn argues that he presented prima facie evidence of a prescriptive easement. Hawn asserts that his use, when tacked to his predecessors' use, constitutes continuous use for twenty-one years.
An easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate.Alban v. R.K. Co. (1968), 15 Ohio St.2d 229, 231; Yeager v.Tuning (1908), 79 Ohio St. 121, 124. To establish a prescriptive easement, a claimant must show by clear and convincing evidence an open, notorious, adverse, and continuous use of the disputed property for twenty-one years. Keish v.Russell, (Sept. 11, 1996), Athens App. No. 95CA1686, unreported, citing J.F. Gioia, Inc. v. Cardinal American Corp.
(1985), 23 Ohio App.3d 33, 36. Once the claimant establishes all of the elements for a prescriptive easement, the landowner may present evidence of permissive use to rebut the adverse nature of the claimant's use. McInnish v. Sibit (1953),114 Ohio App. 490, 493. The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing," retains its focus upon the existence of "some competent, credible evidence." See State v. Schiebel (1990),55 Ohio St.3d 71, 74.
To show he continuously used property for twenty-one years, a claimant may "tack" his adverse use with a predecessor in title. Hindall v. Martinez (1990), 69 Ohio App.3d 580, 584. To tack a predecessor's adverse use, the claimant must establish that (1) he and the predecessor were in privity; (2) they equitably and continuously used the disputed property; (3) in the same or a similar manner; and (4) the use was open, notorious, and adverse to the title holder's interest in the land. Id.
Hawn produced evidence that Kremin and Whitaker, his predecessors in title, used the road to access the property for the limited purpose of removing timber in the 1960's to the 1970's. Hawn did not produce any evidence establishing any use by a person in privity with him in the 1980's and 1990's. Furthermore, Whitaker used the road, at least in part, to timber wood for the Pleasants, which implies they consented to his use of the road. Therefore, we find competent, credible evidence to show that Hawn did not continuously use the property in a similar manner to previous owners with whom he was in privity. Thus, we find that the trial court's judgment that Hawn failed to establish an easement by prescription is not against the manifest weight of the evidence. Accordingly, the trial court did not err by dismissing Hawn's claim on this issue.
 D.
Hawn also argues that he established an easement through necessity. An "easement by necessity is implied by law to provide a right of way over land which could have been effectuated by an express grant but was not." Tiller v. Hinton
(1985), 19 Ohio St.3d 66, 69. "Strict necessity" must exist to justify the implication of an easement by necessity where there is an alternative outlet to a public road, even though the alternate route may be less convenient and more expensive.Tratter v. Rausch (1950), 154 Ohio St. 286, paragraph eight of the syllabus.
Hawn testified that the road was the only access to his property. However, Ott testified that when he entered Hawn's property, he did not cross the Pleasants' property. Therefore, we find competent, credible evidence to support the trial court's determination that Hawn failed to prove that but for the road, Hawn could not access his property.
As we find competent, credible evidence to support the factual findings of the trial court, we find that they were not against the manifest weight of the evidence. Therefore, we find that the trial court did nor err in dismissing Hawn's case. Accordingly, we affirm the judgment of the trial court on the first assignment of error.
 III.
In his second assignment of error, Hawn asserts that the trial court abused its discretion by excluding exhibits he offered into evidence. A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169.
Hawn first argues that the trial court abused its discretion by failing to admit letters Ott wrote to Hawn containing Ott's opinion about the north fork. Hawn asserts that the probative value of the reports outweighed the cumulative effect of the evidence. Evid.R. 403(B) provides that the trial court may exclude relevant evidence if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
In his testimony, Ott stated his opinions and conclusions about the road, and on what evidence those opinions and conclusions were based. Ott also summarized the contents of the letters in his testimony. Hawn proffered ninety-three exhibits and presented Ott's opinion through testimony. Given the large number of exhibits in this case and the overlap between the contents of the letters and Ott's testimony, we find that the trial court did not abuse its discretion in finding that the introduction of Ott's letters constituted the needless presentation of cumulative evidence.
Hawn next argues that the trial court abused its discretion by excluding two maps he prepared purporting to show where the north fork ran in conjunction with Stahl's Road. Hawn argues that these exhibits were admissible as an expert opinion, based upon his profession as a real estate broker. Alternatively, Hawn asserts that his exhibits were admissible as lay opinion based upon his familiarity with the real estate and the north fork.
Generally, only qualified expert witnesses are permitted to testify as to their opinions. See Evid.R. 702. However, Evid.R. 701 does allow lay opinion testimony under certain circumstances. Specifically, a lay witness may testify in the form of an opinion so long as such opinion is "rationally based on the perception of the witness" and is "helpful to a clear understanding of his testimony or the determination of a fact in issue."
At trial, Hawn testified that he was a real estate broker, but had no experience as a surveyor. Hawn did not establish his experience as a real estate broker provided him with the necessary qualifications to present expert testimony about the location of Stahl's Road in relation to the north fork. As Hawn did not properly qualify himself as an expert, we find that the trial court did not abuse its discretion by excluding Hawn's interpretive maps.
We also find that the trial court did not abuse its discretion by excluding the maps as Hawn's lay opinion. To clarify Hawn's testimony as to where he believed the road ran, the trial court viewed the property, then ordered Hawn to draw a map at trial so that the Pleasants could contribute to its contents. The trial court acted within its discretion by finding that the map drawn at trial contributed more to the trial court's understanding of Hawn's testimony and whether Hawn had a claim to the road than Hawn's other two maps. Therefore, we find that the trial court did not abuse its discretion in excluding the two maps made by Hawn.
Hawn also asserts that the trial court abused its discretion by excluding photographs that he properly authenticated and which complied with the "best evidence" rule. Hawn contends that the trial court erred by finding that, because he failed to comply with Evid.R. 902(4), he did not properly authenticate the photographs.
Under Evid.R. 1001(3), an "original" of a photograph includes a negative or any print therefrom. The original photograph must comply with other rules of evidence, including authentication, before it may be admitted. See Zalud Oldsmobile Pontiac, Inc.v. Tracy (1996), 77 Ohio St.3d 74.
Extrinsic evidence of authenticity is not required for certified copies of official records. Evid.R. 902(4). However, if a public record is not self-authenticating, authentication may be satisfied by evidence sufficient to support a finding that the photograph is what its proponent claims it to be. Evid.R. 901(A). The most common means of authenticating a document, including a photograph, is through the testimony of a person with knowledge about the document. Evid.R. 901(B)(1);St. Paul Fire Marine, Ins. Co. v. Ohio Fast Freight, Inc.
(1982), 8 Ohio App.3d 155, 158. A proponent may authenticate a purported public record, by showing that it is from a public office where such records are kept. Evid.R. 901(B)(7). If a photograph creates no suspicion as to its authenticity, was in a place where it, if authentic, would likely be, and has been in existence twenty years or more at the time it was offered, the photograph is properly authenticated. Evid.R. 901(B)(8). The standard to authenticate is not rigorous, and its low threshold reflects an orientation of the Rules toward favoring admission of evidence. Strait v. Baggott (Nov. 14, 1997), Montgomery App. No. 16078, unreported, citing Weissenberger's Ohio Evidence Treatise (1997), Section 901.2.
Hawn testified as to where he ordered, obtained and compiled the aerial photographs from the original negatives and those copies of certain aerial photographs were available in the SCSCD. Hawn personally compiled the photographs and testified where such photographs were stored and kept. Only one of the ten photographs that the trial court excluded, taken in 1981, was less than twenty years old, however, Hawn retrieved it from the USDA, a government agency, which ordinarily keeps such records. With the exception of one photograph upon which Hawn made notations, none of the photographs created suspicion as to their authenticity. Because marks on a photograph could bring its authenticity into question, the trial court did not abuse its discretion in excluding that photograph. With regard to the nine remaining photographs, we find that Hawn properly authenticated them and that the trial court abused its discretion by excluding them.
Though we find that the trial court erred by excluding the photographs, that error does not require reversal unless the error prejudiced Hawn and reversal is necessary to ensure substantial justice. See App. R. 12(B); Seley v. G.D. Searle Co. (1981), 67 Ohio St.2d 192. Generally, to find substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors, but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision. Hallworth v. Republic Steel Corp.
(1950), 153 Ohio St. 349, paragraph three of the syllabus.
In this case, the trial court abused its discretion by failing to admit the exhibits for Hawn's failure to authenticate the photographs. However, Hawn proffered the photographs as illustrations of his witnesses' testimony. The evidence that the trial court improperly excluded did not correct the defects in Hawn's presentation of a prima facie case. The trial court allowed Ott and Smith to opine about the photographs and what Ott and Smith believed the photographs depicted. However, neither Ott nor Smith could opine what type of road the photographs portrayed, or for what purpose the road was built, used or how it was maintained. Furthermore, the photographs did not correct Hawn's failure to produce any evidence that Stahl's Road was ever part of Jacquay's Run, or that the north fork of Jacquay's Run was Stahl's Road. In short, if the trial court had entered the photographs, the trial court would probably have made the same decision. Accordingly, overrule Hawn's second assignment of error.
 IV.
In conclusion, we find competent, credible evidence to support the trial court's factual findings and that the trial court's findings were not against the manifest weight of the evidence. Therefore, we find that the trial court did not err in dismissing Hawn's case. We also find that the trial court did not abuse its discretion or prejudicially err in excluding evidence from the trial.
Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, J. and Harsha, J.:
Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ Roger L. Kline Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.