IN RE GILBRAITH ET AL.; GILBRAITH, APPELLEE, *v.*
HIXSON ET AL., APPELLANTS.

[Cite as Gilbraith *v.* Hixson (1987), 32 Ohio St. 3d 127.]

(No. 86-734—Decided August 19, 1987.)

128

*Lavelle & Goldsberry Co., L.P.A., Frank A. Lavelle* and *Herman A. Carson,* for appellee.

*Gwinn & Wallace* and *Susan L. Gwinn,* for appellants.

SHANNON, J. It is well-settled in Ohio, under the doctrine of *res judicata,*[1] that "[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Norwood* v. *McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E. 2d 67, paragraph one of the syllabus, approved and followed in *Whitehead* v. *Gen. Tel. Co.* (1969), 20 Ohio St. 2d 108, 49 O.O. 2d 435, 254 N.E. 2d 10, paragraph one of

---

[1] As it has come to be recognized in its modern form, *res judicata* also takes in the doctrine of collateral estoppel, which provides that "if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71, 74, 6 O.O. 3d 274, 276, 369 N.E. 2d 776, 777.

the syllabus, and quoted in *Werlin Corp.* v. *Pub. Util. Comm.* (1978), 53 Ohio St. 2d 76, 81, 7 O.O. 3d 152, 154, 372 N.E. 2d 592, 596. In this appeal, the fundamental question presented to us is whether the judicially created doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order, thereby barring a subsequent paternity action brought pursuant to Ohio's Parentage Act, R.C. Chapter 3111. We answer this question in the affirmative.

The majority's decision in the court of appeals relied primarily on two grounds in support of its general legal conclusion that neither a dissolution decree nor a legitimation order can serve to foreclose further inquiry into the matter of paternity in proceedings initiated pursuant to the parentage provisions of R.C. Chapter 3111. Determining first that the essentially nonadversarial nature of dissolution and legitimation proceedings under Ohio law is a significant consideration that weighs against the application of the doctrine of *res judicata,* the majority went on to say that "clear mandates" appearing within two of the parentage statutes, R.C. 3111.03 and 3111.04, eliminate any doubt that the doctrine has no place in an R.C. Chapter 3111 parentage action. For the following reasons, we are not persuaded by either line of this rationale.

With respect to the effect to be given to the nonadversarial nature of the proceedings, we have said, in *Horne* v. *Woolever* (1959), 170 Ohio St. 178, 182, 10 O.O. 2d 114, 117, 163 N.E. 2d 378, 382, that, as a general rule, a consent judgment operates as *res judicata* with the same force given to a judgment entered on the merits in a fully adversarial proceeding. See *Vulcan, Inc.* v. *Fordees Corp.* (C.A.6,

1981), 658 F. 2d 1106 (strong public interest in achieving finality in litigation is advanced by giving *res judicata* effect to consent decrees). Implicit in the rule is the recognition that a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment. *Sponseller* v. *Sponseller* (1924), 110 Ohio St. 395, 399, 144 N.E. 48, 50. See, also, *Ohio State Medical Bd.* v. *Zwick* (1978), 59 Ohio App. 2d 133, 139-140, 13 O.O. 3d 178, 181-182, 392 N.E. 2d 1276, 1280.

There is, in our view, no sound reason for departing from what has come to be accepted among a majority of state courts as the prevailing modern view on consent judgments and their operation. Annotation, Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect (1979), 91 A.L.R. 3d 1170. We find, therefore, that a dissolution decree or a legitimation order cannot, in law, be denied *res judicata* effect simply because it results from an agreement between parties in a nonadversarial proceeding.

This brings us to the question of whether the General Assembly has removed the doctrine of *res judicata,* in whole or in part, from the realm of parentage actions by virtue of any provision appearing in R.C. Chapter 3111. In this respect, our attention is drawn, in particular, to the statutes cited by the majority below in support of its holding.

Under R.C. 3111.04(A), an "action to determine the existence or nonexistence of the father and child relationship" may be commenced by any one of several specified individuals, including "* * * a man alleged * * * to be the child's father * * *." R.C. 3111.04(B)

provides in general terms that "[a]n agreement does not bar an action under this section," and R.C. 3111.03 separately catalogues a series of presumptions that apply to the existence of the relationship drawn into question. Two of the circumstances giving rise to a presumption of paternity are recognized following a marriage between the alleged father and the child's mother: (1) when the alleged father makes a sworn acknowledgement of paternity before a notary public, or (2) when the alleged father either voluntarily agrees to support the child or is obligated to do so by court order. R.C. 3111.03(A)(3)(a) and (c). A presumption arising under these described circumstances is not, however, irrebuttable; it may be overcome, in accordance with R.C. 3113.03(B), by the presentation of clear and convincing evidence demonstrating the absence of a biological relationship.

In our judgment, none of the foregoing statutory provisions — and, for that matter, no other part of R.C. Chapter 3111 — clearly mandates, either expressly or by implication, the exclusion of the doctrine of *res judicata* from parentage actions. Although it is beyond cavil, with respect to R.C. 3111.04(B), that "an agreement" is explicitly removed as a barrier to the pursuit of an action, we are convinced that the statute is, in general, limited by its terms to those agreements ordinarily made outside the judicial process, and that it is not intended to apply when there is a final judicial resolution of rights and obliga-

tions on the basis of an underlying agreement between the parties to an action. This is just as true for a legitimation order[2] as it is for a dissolution decree, both of which manifestly involve, by virtue of their roles in the judicial process, something more than an "agreement" as that term is used in R.C. 3111.04(B).

Our conclusion is no different with respect to the effect of the rebuttable statutory presumptions. R.C. 3111.03 (A)(3)(a) cannot be said to defeat the doctrine of *res judicata* because the written acknowledgements of paternity to which it refers are made before a notary public outside the judicial process, and thus fall distinctly short of final court orders in proceedings such as those for legitimation and dissolution. R.C. 3111.03(A)(3)(c) likewise fails as an effective deterrent to application of the doctrine, because to the extent that it reaches judicial action, the provision is limited explicitly to orders requiring only the payment of child support; it does not bring within its sweep those markedly different instances in which a determination of paternity is made as part of the comprehensive judicial resolution of rights and obligations attendant to the dissolution of a marriage under R.C. 3105.61 through 3105.65.

In the absence of any other statutory basis for the outright rejection of the doctrine, we are left to decide only whether there exists, on grounds of public policy, a persuasive reason for holding that *res judicata* should not apply in parentage actions. Our starting

---

[2] We reject the appellee's argument that legitimation proceedings initiated pursuant to R.C. 2105.18 can result in nothing more than a "finding [of fact]." Under the statute, if it is found that the applicant is the natural father of the child in question, "[t]hereafter, the child is the child of the applicant, as though born to him in lawful

wedlock." This result, which was explicitly recognized in the legitimation order entered in this cause, is similar, in its binding legal effect, to that achieved by a declaratory judgment. Among other things, it preserves for the child all rights of inheritance enjoyed by legitimate children.

point here is the recognition that the doctrine itself has deep roots in the policy considerations that have shaped the operation of this country's legal system. As the United States Supreme Court has said, "* * * '[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts * * *.' " *Federated Dept. Stores, Inc.* v. *Moitie* (1981), 452 U.S. 394, 401, quoting *Hart Steel Co.* v. *RR. Supply Co.* (1917), 244 U.S. 294, 299.

Simply put, the doctrine serves vital public interests by assuring that all litigation has a reasonable ending point and by preventing a party from having to contest the same issue or cause more than once. *LaBarbera* v. *Batsch* (1967), 10 Ohio St. 2d 106, 113, 39 O.O. 2d 103, 108, 227 N.E. 2d 55, 62. " '[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the results of the contest, and that matters once tried shall be considered forever settled as between the parties.' " *Federated Dept. Stores, supra,* at 401, quoting *Baldwin* v. *Traveling Men's Assn.* (1931), 283 U.S. 522, 525. In achieving precisely these ends, the doctrine effectively promotes stability, certainty, respect, consistency and finality, both in individual judicial determinations and in the legal system as a whole.

In our estimation, the same considerations underpinning *res judicata* as a doctrine of general significance apply with equal force in parentage actions, and there is, accordingly, no sound policy reason for denying effect to the doctrine in such cases. The establishment and maintenance of the various aspects of the relationship between parent and child is a particularly intricate, sensitive and emotional process with which courts should be reluctant to interfere. In those cases where, by force of events, judicial intervention occurs, where the matter of parentage is determined with finality and in the absence of fraud, and where that determination is not later vacated, either on direct appeal or pursuant to a recognized legal remedy such as that set forth in Civ. R. 60(B), the policy of this state requires, in sum, that the parent-child relationship be shielded from the unsettling effects of further judicial inquiry, and that relitigation of parentage be barred, as a general rule, in any subsequent actions, including those initiated under R.C. Chapter 3111.

Having determined that there is no impediment in law to the application of the doctrine of *res judicata* in a parentage action, even when the bar is asserted on the basis of a consent judgment such as a legitimation order or a dissolution decree, we turn now to an examination of whether the doctrine was erroneously applied in the context of the particular facts and circumstances of the instant case. With respect to this final stage in our analysis, we are not persuaded by any of the three reasons advanced by the appellee in support of the exclusion of the doctrine. In our view, (1) the determinations of parentage were essential parts of the prior legitimation and dissolution proceedings; (2) that part of the doctrine generally requiring strict mutuality of parties was properly relaxed in the interest of justice, both because there was a substantial identity of parties and because the doctrine was invoked solely against a party who had been afforded a full and fair opportunity to contest the issue of paternity in the prior proceedings, see *Goodson* v. *McDonough Power Equip. Co.* (1983), 2 Ohio St. 3d 193, 2 OBR 732, 443 N.E. 2d 978; *Hicks* v. *De La Cruz*

(1977), 52 Ohio St. 2d 71, 6 O.O. 3d 274, 369 N.E. 2d 776 (recognizing that, in some cases a party barred from relitigating an issue against a named opponent is similarly precluded in a subsequent action involving another person); and (3) the matter of fraud in obtaining the legitimation order and the dissolution decree was not properly raised in the trial court and was, therefore, not preserved for appellate review.

For all the foregoing reasons, we must conclude that the court of appeals erred when it reversed the common pleas court's determination on the ground of *res judicata*. Accordingly, the judgment of the court of appeals is hereby reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, COOK, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

COOK, J., of the Eleventh Appellate District, sitting for LOCHER, J.

SHANNON, J., of the First Appellate District, sitting for HOLMES, J.