**Johnson v. Webber**
*[Cite as 8 AOA 702]*

*Case No. CA90-05-041*
*Clermont County, (12th)*
*Decided December 17, 1990*

R. Daniel Hannon, Clermont County Public Defender and D. Vincent Faris, 10 South Third Street, Batavia, Ohio 45103, for Plaintiff-Appellee.

Donald W. White, Clermont County Prosecutor and Gayle A. Walker, 333 East Main Street, 2nd Floor, Batavia, Ohio 45103, for Defendant-Appellant.

YOUNG, J.

On August 19, 1980, plaintiff-appellee, Gene Johnson, filed a complaint for divorce against defendant-appellant, Janet Johnson Webber. In the complaint, appellee admitted that he was the father of the parties' one child, Jeana Marie Johnson, born December 7, 1977, but specifically denied paternity of a second child, Amanda Renee Johnson, born August 18, 1980.

The matter came on for a contested hearing on May 28, 1981. On May 29, 1981, the referee concluded that the children were both issue of the marriage. On June 25, 1981, the trial court adopted the referee's report and entered a divorce decree and judgment entry granting custody of Jeana to appellee and custody of Amanda to appellant. The court further ordered appellee to pay $15 per week in child support for Amanda.

On May 16, 1989, appellant filed a motion for contempt based on appellee's alleged failure to pay child support. Appellee responded by filing a motion to modify the support order and a request for paternity testing. Following a hearing, the referee recommended that appellee's motion be granted. The trial court overruled appellant's objections to the referee's report in a decision dated March 30, 1990 and filed a judgment entry on April 11, 1990. It is from that entry that appellant appeals, setting forth a single assignment of error as follows:

"THE COURT ABUSED ITS DISCRETION IN GRANTING CIVIL RULE 60(B) RELIEF FROM A DIVORCE DECREE JUDGMENT AND ORDERING PATERNITY TESTS WHERE THE POST-DECREE MOTION FOR RELIEF WAS UNTIMELY AND NO GROUNDS FOR RELIEF WERE ESTABLISHED PURSUANT TO CIVIL RULE 60(B)."

Appellee specifically based his motion to modify and request for paternity testing on Civ. R. 75(I), which is used to invoke the trial court's continuing jurisdiction over matters of child support and custody. See *Cooper v. Cooper* (1983), 10 Ohio App. 3d 143. The trial court, however, treated the motion as one for relief from judgment under Civ. R. 60(B). Regardless of the procedural grounds upon which it was based, we find that appellee's motion cannot properly be sustained on the state of the record before us.

It is well established in Ohio that

"*** a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. The prior judgment is *res judicata* as between the parties or their privies." *Whitehead v. Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, paragraph one of the syllabus. See also, *Scholler v. Scholler* (1984), 10 Ohio St. 3d 98, paragraph three of the syllabus.

Under this doctrine, "a point of law or fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies." *Whitehead, supra,* at paragraph two of the syllabus.

The trial court, without citing authority, ruled that "*[r]es judicata* does not bar a subsequent paternity action." However, in the syllabus of *Gilbraith v. Hixson* (1987), 32 Ohio St. 3d 127, the Ohio Supreme Court held that "[t]he doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order ***." In so holding, the court stated:

"*** The establishment and maintenance of the various aspects of the relationship between parent and child is a particularly intricate, sensitive and emotional process with which courts should be reluctant to interfere. In those cases where, by force of events, judicial intervention occurs, where the matter of parentage is determined with finality and in the absence of fraud, and where that determination is not later vacated, either on direct appeal or pursuant to a recognized legal remedy such as that set forth in Civ. R. 60(B), the policy of this state requires, in sum, that

the parent-child relationship be shielded from the unsettling effects of further judicial inquiry, and that relitigation of parentage be barred, as a general rule, in any subsequent actions. ***" *Id.* at 131.

We find that the policy concerns and reasoning of *Gilbraith* apply with even greater force to judgments secured following contested divorce proceedings. Accordingly, we hold that, in the absence of fraud, the doctrine of *res judicata* can be invoked in a postdecree child support modification proceeding to give conclusive effect to a determination of parentage contained in a divorce decree.

Appellee cites the exception in *Gilbraith, supra,* and asserts that *res judicata* does not bar his claim because the prior judgment was the product of appellant's fraudulent representation that appellee is the father of Amanda. In making this contention, appellee relies heavily upon *Carson v. Carson* (May 1, 1989), Brown App. No. CA88-06-008, unreported. A review of the facts, however, reveals that *Carson* is easily distinguishable and not controlling in the matter *sub judice.*

In *Carson, supra,* Timothy S. Carson entered into marriage with Tamela Carson based upon the latter's representation that he was the father of the child with whom she was pregnant at the time of the marriage. The parties subsequently entered into a separation agreement which was eventually incorporated into a dissolution decree. The agreement and decree provided that Timothy Carson was to pay support for the child in question which was deemed to be issue of the marriage. Subsequent to the decree, Timothy Carson discovered that he was not the father and that Tamela Carson's representations to the contrary were fraudulent. The trial court and a majority of this court ruled that the discovery of this fraud subsequent to the decree constituted a change of circumstances justifying a modification of the support order.

In the present case, there is no evidence of fraudulent inducement or the subsequent discovery thereof which would constitute a change of circumstances since the original support order. Unlike the putative father in the *Carson* case, appellee did not enter into the marriage or any support agreement on the basis of appellant's representations. Appellee raised the issue of paternity in his complaint for divorce and the matter was fully litigated. The referee below specifically found that the issues raised in the instant matter were presented to the referee in the prior divorce proceedings. Further, appellee testified and stated that he presented all the evidence he wanted to present in those proceedings. Appellee also indicated that he discussed the possibility of blood tests with his attorney, but did not pursue the matter at that time.

Based upon the foregoing, we find that appellee had a full and fair opportunity to contest the issue of paternity in the prior divorce proceedings. Evidence was presented by both parties and the matter was passed upon and determined by the court. Accordingly, appellee is now estopped under the doctrine of *res judicata* from relitigating the issue of paternity. *Gilbraith, supra; Scholler, supra.* Appellee cannot, when faced with a contempt citation, simply allege fraud and reopen the paternity question some eight years after it was fully adjudicated.

Appellant's assignment of error is sustained.

*Judgment reversed and*
*cause remanded.*

JONES, P.J., concurs.

KOEHLER, J., concurs separately.

KOEHLER, J., concurring separately.

The matter before the trial court was a motion to modify child support previously ordered and a request for paternity testing. The relief requested invoked the trial court's continuing jurisdiction in such matters.

In the first instance, I write to express my belief that the motion before the court was not properly considered as a Civ. R. 60(B) motion to set aside all or a portion of the original order and judgment for divorce. I have reservations as to whether or not we have a final appealable order in this matter.

Nevertheless, I must concur in the finding of the court that the paternity issue which is raised is *res adjudicata.* I do this with some misgivings.

The record indicates that the appellant, for whatever reason, for many years did not enforce the order for support of the child whose paternity is at issue. The appellee's belated effort to establish nonpaternity presents a possible basis to establish fraud upon

the court in the original contested hearing and then to obtain the relief to which the father may be entitled.

The Indiana Supreme Court in *Fairrow v. Fairrow* (Sept. 7, 1990), Ind SupCt No. 49SO2-9009-CV-585, confronted a similar issue and recognized the conflicting public policy positions involved: "*** financial support should not be terminated if it is 'firmly established.'" On the other hand, there is substantial public policy, namely justice, that disfavors a support order against a husband who is not the child's father.

It appears that such matter must be considered on a case by case basis and in this cause I must concur.