959 F.2d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James W. CHILDS, Plaintiff-Appellant,
v.
VAN WERT COUNTY, OHIO, et al., Defendants-Appellees.
 No. 91-3138.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1992.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and ROSEN, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a grant of summary judgment for the defendants in a federal action that was filed almost simultaneously with the filing of a state court action based on the same set of facts. After considering the evidence and the briefs of the parties, the state court entered a brief order dismissing the case. The order did not indicate that the dismissal was for the want of jurisdiction, nor did it say that the dismissal would operate other than as adjudication on the merits.
 
 
 2
 Applying traditional res judicata principles, the federal district court held that the state court dismissal order precluded the plaintiff from recovering anything in the federal case; summary judgment was entered on that basis. The central issue on appeal is whether, under state law, the dismissal of the state court action is to be deemed an adjudication on the merits, as opposed to an adjudication that the state court lacked subject matter jurisdiction. We agree with the district court's conclusion that the dismissal order must be treated as an adjudication on the merits, and we shall therefore affirm the summary judgment.
 
 
 3
 * The plaintiff, James W. Childs, is a lawyer and sometime professor of law. In the early 1980s, it appears, he and a certain insurance agent were involved in structuring retirement plans for sale to small businesses. Alleging misrepresentation, three purchasers of such plans filed lawsuits against Mr. Childs and the insurance agent in the Court of Common Pleas of Van Wert County, Ohio. The cases were assigned to a visiting judge from Greene County, Judge Edward L. Kimmel.
 
 
 4
 Pretrial settlements were reached in 1985, and the cases were dismissed. Judge Kimmel was apparently concerned about the propriety of the defendants' conduct, however, and he took steps that ultimately led to the appointment of a special prosecutor. The appointment was approved by Van Wert County Common Pleas Judge Sumner E. Walters.
 
 
 5
 After conducting an investigation, the special prosecutor sent Judge Walters a final report under date of October 29, 1986. This report suggested that Mr. Childs and the insurance agent could have been prosecuted on three counts of "securing writings by deception," but the report went on to give a number of reasons (including the reluctance of potential witnesses to testify and the age and complexity of the case) why the matter had not been presented to a grand jury. In lieu of seeking indictments, the report concluded, the special prosecutor had reached agreements under which Mr. Childs promised not to engage in the active practice of law in Ohio and the insurance agent agreed to stop selling insurance in that state.
 
 
 6
 Judge Walters gave the special prosecutor's report to the clerk of courts for filing. He instructed her, according to the clerk's subsequent affidavit, to file it as a criminal case. She then filed-stamped the report, assigned the matter a criminal case number, made a docket entry reading "In regard to the appointment of a special prosecuting attorney concerning the alleged criminal conduct of James W. Childs [et al.]," indexed the case, and placed the report in a case folder. The record contains no indication that any notice was given to Mr. Childs.
 
 
 7
 Several months later, at Judge Walters' instruction, the clerk wrote a letter to Judge Kimmel seeking guidance with respect to inquiries that Judge Walters had received from the press and others about the special prosecutor's report. Judge Kimmel replied that because there had been no motion to have the file or the report placed under seal, "[t]he record is ... a public record and whoever wishes to examine it may do so...." The file remained open for public inspection thereafter, and various people obtained copies.
 
 
 8
 Mr. Childs has sworn that he did not learn of the special prosecutor's report until March 25, 1988, and that he first learned of the criminal "case" on December 7, 1988. Two weeks after the latter date he filed a motion in the Common Pleas Court asking that the record be stricken from the files or sealed; that the clerk be instructed to furnish a list of all persons known to have obtained copies of any document in the case; and that the publication or use of any such document be enjoined. The motion was accompanied by an affidavit of bias and prejudice against Judge Kimmel.
 
 
 9
 The case that is now before us on appeal was filed by Mr. Childs in the United States District Court for the Northern District of Ohio on March 13, 1989. The defendants included Van Wert County and its three commissioners; the current clerk of courts of Van Wert County and her predecessor; Common Pleas Judges Walters and Kimmel; and the lawyer for the plaintiffs in the original civil litigation. Alleging federal jurisdiction under 42 U.S.C. §§ 1983 and 1985, the complaint asserted federal constitutional and pendent state law claims arising out of the allegedly wrongful and surreptitious creation of the criminal file and wrongful publication of the special prosecutor's report. The complaint sought injunctive relief and multi-million dollar damages for emotional distress and injury to reputation.
 
 
 10
 Two days after the filing of his federal case, Mr. Childs commenced an action in the Supreme Court of Ohio against Judges Kimmel and Walters and the clerk of courts of Van Wert County. Invoking the Supreme Court's original jurisdiction in mandamus, prohibition and procedendo (see Article IV, §§ 2(B)(1)(b), (d) and (e) of the Ohio Constitution), alleging violations of 42 U.S.C. §§ 1983 and 1985, inter al., and citing Ohio Revised Code § 2731.11 (a statute providing for the recovery of damages by a plaintiff for whom judgment is rendered in a mandamus proceeding), Mr. Childs' Supreme Court petition sought (1) a writ of procedendo directing Judge Walters to have the clerk of the Common Pleas Court expunge the criminal "case" from the files; (2) a writ of prohibition directing Judge Kimmel not to take any action therein; (3) a writ of mandamus requiring Judge Walters to notify all purchasers of documents from the criminal file that the file had been expunged from the record and requiring Judge Walters to enjoin all such persons from publishing or republishing the contents of the file; and (4) an award of multi-million dollar compensatory and punitive damages.
 
 
 11
 On July 5, 1989, the Supreme Court issued an alternative writ directing the parties to file their evidence by a specified date in August. (The record indicates that the evidence of all parties, including at least two volumes of evidence presented by Mr. Childs, was filed with the Supreme Court on August 9, 1989.) The parties were directed to file merit briefs in accordance with a schedule that required Mr. Childs to file the final brief on or before September 6, 1989.
 
 
 12
 Prior to the completion of briefing, the Supreme Court allowed Judge Kimmel to recuse himself in the common pleas "case." Mr. Childs voluntarily dismissed Judge Kimmel from both the Supreme Court proceeding and the federal court case.
 
 
 13
 Judge Kimmel was replaced in the common pleas matter by another visiting judge, Robert D. Walker. On August 24, 1989, following a hearing on Mr. Childs' motion in the Common Pleas Court, Judge Walker entered an order in which he found that the motion was well taken and that the criminal file ought not to have been created. The order struck the case, the file and the corresponding index references from the records from the Common Pleas Court and ordered that all papers contained in the file be placed under seal and withheld from the public. The order did not instruct the clerk to furnish Mr. Childs a list of people who had already obtained copies of the documents in question, however, nor did it enjoin the use or publication of any such copies. Mr. Childs apparently took no exception to the limited scope of the order.
 
 
 14
 Judge Walters filed his merit brief with the Supreme Court on September 1, 1989. The brief advised the Supreme Court of the order entered by Judge Walker in the common pleas "case" and argued that the order made the Supreme Court proceeding moot. The brief then went on to contend that Mr. Childs had admitted prior knowledge of the special prosecutor's report and its filing; that the report was a public record and was subject to disclosure as such; that Judge Walters was entitled to absolute immunity; that the allegation of wrongful filing did not state a cause of action; and that statements in judicial documents are accorded absolute immunity. The brief concluded with a request that the Supreme Court dismiss the petition.
 
 
 15
 Mr. Childs' reply brief, filed in the Supreme Court on September 6, 1989, agreed that the request for a writ of procedendo against Judge Walters had been rendered moot. The reply brief did not concede that the request for a writ of mandamus was moot, however. (As noted above, the writ of mandamus would have resulted in issuance of an injunction against publication of the contents of the criminal file by persons who had already obtained copies; the order issued by Judge Walker on August 24 granted no such injunction.)
 
 
 16
 Mr. Childs argued in his reply brief that the special prosecutor's report was "confidential" under Ohio Revised Code § 149.43(A) and was not a public record; that there had been no authority for the Common Pleas Court to open a criminal file; that Mr. Childs should have received notice of all papers tendered for filing in the criminal "case;" that his constitutional right of privacy had been violated; and that the Supreme Court should not only issue a writ of mandamus, but should appoint a master to impanel a jury and try the issue of damages.
 
 
 17
 With the filing of the final brief, nothing remained to be done by the parties in the Supreme Court action. As of September 6, 1989, all of the evidence had been submitted to the Supreme Court, the issues had been thoroughly briefed, and the matter appeared ripe for decision.
 
 
 18
 On October 25, 1989, the Supreme Court entered a two-sentence order stating that upon consideration of the cause in a manner prescribed by law, the cause was dismissed sua sponte. The order was not accompanied by an opinion, and it does not appear that Mr. Childs requested separate findings of fact and conclusions of law under Rule 52 of the Ohio Rules of Civil Procedure.[1]
 
 
 19
 Soon after the Supreme Court case was dismissed, Judge Walters moved for summary judgment in the federal case on res judicata grounds. Mr. Childs opposed the motion on the ground that the Supreme Court case had been dismissed other than on the merits. Absent the issuance of a writ of mandamus, Mr. Childs argued, the Supreme Court lacked jurisdiction to award damages, and there had been no adjudication of the damage claims on their merits.
 
 
 20
 After further briefing and oral argument, the district court entered summary judgment in favor of the defendants. Relying heavily on Wozniak v. DuPage County, 845 F.2d 677 (7th Cir.1988), the district court concluded that Mr. Childs' claims against Judge Walters and the court clerk were barred under the "claim preclusion" branch of the res judicata doctrine, while the claims against the defendants who were not parties to the Supreme Court action were barred by collateral estoppel, the "issue preclusion" branch of res judicata.[2] Mr. Childs has perfected a timely appeal from the dismissal of his federal court case.
 
 II
 
 21
 Under 28 U.S.C. § 1738, judicial proceedings in a state court receive the same full faith and credit in federal courts as they have in the courts of the state. The res judicata effect of a state court dismissal order is thus the same in a federal case brought under 42 U.S.C. § 1983 as it would be if the action had been filed in a state court. Allen v. McCurry, 449 U.S. 90, 105 (1980); Barnes v. McDowell, 848 F.2d 725, 730 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 22
 "The doctrine of res judicata," as we said in Lesher v. Lavrich, 784 F.2d 193, 194-195 (6th Cir.1986), a federal case that tracked a parallel proceeding in an Ohio state court, "generally prevents relitigation in a subsequent proceeding involving the same party adversary of any issue that was or might have been decided in a prior judicial decision." To have preclusive effect, under Ohio's res judicata doctrine, the prior decision must have been "[a] final decision or decree rendered upon the merits ... by a court of competent jurisdiction...." Gilbraith v. Hixson, 32 Ohio St.3d 127, 128 (1987), quoting from the first paragraph of the syllabus in Norwood v. McDonald, 142 Ohio St. 299 (1943), as approved and followed in various subsequent Ohio Supreme Court decisions. Where, as here, federal and state actions have proceeded simultaneously, "the first judgment entered must be regarded as res judicata for issues in the remaining case." Lesher, 784 F.2d at 195.
 
 
 23
 As between the Ohio Supreme Court and the federal district court, the former was the first to enter judgment--and there can be no doubt that the order dismissing Mr. Childs' Supreme Court action was a "final" judgment. The more difficult question is whether the Supreme Court's judgment was "rendered upon the merits."
 
 
 24
 Under Rule 41(B) of the Ohio Rules of Civil Procedure, an involuntary dismissal other than for (a) lack of jurisdiction over the person or the subject matter, or (b) failure to join a necessary party, "operates as an adjudication upon the merits unless the court, in its order of dismissal, otherwise specifies." The involuntary order of dismissal entered by the Ohio Supreme Court here did not specify that the dismissal was other than on the merits, and there was no question of any lack of in personam jurisdiction or failure to join a necessary party; the order necessarily operated as an adjudication on the merits, therefore, unless the Supreme Court lacked subject matter jurisdiction.
 
 
 25
 Mr. Childs argues on appeal, as he did in the district court, that the Supreme Court never obtained jurisdiction over the subject matter of his damage claims. Under Ohio Rev.Code § 2731.11, he points out, damages can be recovered in a proceeding for a writ of mandamus only "[i]f judgment in [the] proceeding ... is rendered for the plaintiff...." The Supreme Court not having issued a writ of mandamus, Mr. Childs says, the statute gave it no jurisdiction to award damages.[3] It seems to us, however, that Ohio Rev.Code § 2731.11 clearly gave the Supreme Court jurisdiction to award damages in the mandamus action. A court that rules in the defendant's favor on liability cannot award damages to the plaintiff, of course, but this hardly means that the court lacks jurisdiction over the subject matter of the damage claim--and we believe that the Ohio Supreme Court had jurisdiction over the subject matter of Mr. Childs' damage claims, under § 2731.11, regardless of the fact that it would have had to grant Mr. Childs' request for a writ of mandamus before it could have awarded him damages.[4]
 
 
 26
 A final judgment against Mr. Childs on the merits of his request for mandamus would have operated as res judicata with respect to the damage claims, indeed, even if those claims had never been asserted in the Supreme Court action at all. See Wozniak, 845 F.2d at 681, where the Court of Appeals for the Seventh Circuit noted that under Illinois law, the plaintiffs "not only could but should have joined their damage claim under Section 1983 with their mandamus claim in state court." By failing to assert in state court a damage claim which the state court had authority to consider in connection with the mandamus matter, Wozniak held, the plaintiff's had split their claim in a way that made them vulnerable to the defense of res judicata after the state court rendered its final decision in the mandamus proceeding. Id. at 681-82.
 
 
 27
 In reaching this conclusion, the Wozniak court relied on the following language from its decision in Hagee v. City of Evanston, 729 F.2d 510 (7th Cir.1984):
 
 
 28
 "The principle that res judicata extends to all matters within the purview of the original action, whether or not they were actually raised, is tantamount to a rule requiring parties to consolidate all closely related matters into one suit. As such, the principle serves well the interest of judicial economy, and thus it is at the core of the res judicata doctrine. Two corollaries of that principle are also of fundamental importance to Illinois res judicata doctrine. First is the rule that a party may not maintain two suits based on the same set of facts by the simple expediency of limiting the theories of recovery advanced in the first. The second rule is that a party may not maintain two suits based on the same set of facts simply by altering the claim for relief from one suit to the next." Hagee, 729 F.2d at 514, as quoted (with citations and footnotes omitted) in Wozniak, 845 F.2d at 681.
 
 
 29
 We regard the quoted language as a good summary of legal principles that would be no less applicable in Ohio than in Illinois. And even if Ohio law had precluded Mr. Childs from asserting his 42 U.S.C. §§ 1983 and 1985 theories in his original action in the Ohio Supreme Court, it would have made no difference to the result in this case. See Falk v. State Bar of Michigan, 631 F.Supp. 1515, 1521 (W.D.Mich.1986), aff'd, 815 F.2d 77 (6th Cir.1987), where Judge Hillman wrote as follows:
 
 
 30
 "Plaintiff cannot avoid the preclusive effect of claim preclusion by seeking redress in a court of limited original jurisdiction and, then, contending that the first court could not have heard alternative theories arising from the same cause of action. The state proceeding and this proceeding both involve the same facts and evidence. The two actions truly arise from one cause of action.... Plaintiff should not be allowed to hale defendant into a second court simply because the first court in which he chose to sue defendant could not consider all the various theories of recovery arising from his single cause of action. Consequently, plaintiff's inability to bring a section 1983 action within the original jurisdiction of the Michigan Supreme Court does not affect the conclusion that the two cases involve the same matter in issue." (Citation omitted.)
 
 
 31
 This court affirmed the judgment in Falk on the basis of Judge Hillman's opinion.
 
 
 32
 It remains to be considered, finally, whether the Supreme Court case was necessarily dismissed as moot. If so, even though the dismissal entry failed to specify that the adjudication was other than on the merits, it is arguable that the dismissal would not have operated as res judicata. See Lundblad v. Celeste, No. 84-3561 (unpublished slip op. 6th Cir. August 22, 1985) (Ohio state court judgment dismissing a complaint as moot without specifying whether the dismissal was with or without prejudice does not constitute a judgment on the merits and has no preclusive effect in other litigation).
 
 
 33
 The Ohio Supreme Court did not explain its reasons for dismissing Mr. Childs' case, and we are not persuaded that the Supreme Court must have concluded that the request for mandamus was moot. The prayer for relief in the mandamus count of Mr. Childs' Supreme Court petition was as follows:
 
 
 34
 "[R]elator prays for a writ of mandamus to issue to respondent Judge Sumner E. Walters to notify ally [sic] purchasers of copies of case NO. CR-86-11-53 that the file is expunged from the record and the record sealed and to issue an injunction against all such persons from publishing or republishing, in any manner or means, the contents, or any part thereof, in any manner and in any forum, and for his costs."
 
 
 35
 This is simply not the relief that was granted by Judge Walker in the Common Pleas Court; as we have said, Judge Walker's order of August 24, 1989, expunged the criminal case from the record and sealed the file, but gave no notice to prior purchasers of file documents and did not enjoin such purchasers from publishing or republishing the contents thereof. It does not seem to us that Mr. Childs' petition for a writ of mandamus was moot, whatever other infirmities it may have had, and the Supreme Court having failed to specify either that the petition was moot or that the order of dismissal was not an adjudication on the merits, Rule 42(B)(3) compels the conclusion that the dismissal operated as an adjudication on the merits. See State ex rel. Kopchak, 44 Ohio St.2d 3 (1975).
 
 
 36
 As noted in the district court's opinion, the parties agreed that a decision in favor of Judge Walters and the clerk of courts on the res judicata issue would be deemed dispositive as to the remaining defendants. Accordingly, the judgment of the district court is AFFIRMED in its entirety.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan sitting by designation
 
 
 [1]
 Rule VIII of the Rules of Practice of the Supreme Court of Ohio makes the Ohio Rule of Civil Procedure applicable to cases filed in the Supreme Court as original actions
 
 
 [2]
 In its modern form, the doctrine of res judicata is often analyzed as covering both "issue preclusion" and "claim preclusion." See Migra v. Warren City School District Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984). This is the analysis followed in Ohio. See Gilbraith v. Hixson, 32 Ohio St.3d 127, 128 n. 1 (1987)
 
 
 [3]
 Admitting that no case law so holds, Mr. Childs also argues that Ohio Rev.Code § 2731.11 is unconstitutional insofar as it applies to the Ohio Supreme Court. This argument was not presented to the district court, and we decline to consider it here
 
 
 [4]
 In Costello v. United States, 365 U.S. 265 (1961), which arose under the federal counterpart of Rule 41 of the Ohio Rules of Civil Procedure, the United States Supreme Court declined to give res judicata effect to the dismissal of a naturalization proceeding on account of the plaintiff's failure to file an affidavit of good cause. The filing of the affidavit was a statutory condition precedent to the court's going forward to determine the merits of the substantive claim. The Supreme Court explained that the dismissals that Rule 41 lists as operating as adjudications on the merits "primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them." 365 U.S. at 286. In the case at bar, by contrast, the defendants had to incur the inconvenience of preparing to meet the merits of Mr. Childs' case in the Supreme Court because there was no initial bar to the Supreme Court's reaching them--and we do not consider the requirement that the court issue a writ of mandamus if the relator is to recover damages in a mandamus proceeding as comparable to the requirement in the Costello situation that the plaintiff file an affidavit of good cause in order to confer jurisdiction on the court