OPINION
Appellees Barbara L. Hayes and James E. Hayes ("the Hayeses") filed a complaint on July 6, 1998, in the Columbiana County Court of Common Pleas alleging that Michael White ("White") negligently ran a stop sign and collided with their car. Only Mrs. Hayes was in the vehicle at the time of the accident. The Hayeses also named Appellant Westfield Insurance Company ("Westfield") as a defendant. Westfield provided uninsured/underinsured motorist ("UM/UIM") coverage for the Hayeses' vehicle in the amount of $100,000 per person/$300,000 per accident.
On April 6, 2000, the trial court dismissed White from the action due to a settlement that had been reached between the Hayeses and White. There is some indication in the record that White's insurance company agreed to pay the $100,000 limit of his automobile liability policy, and that Westfield agreed to the settlement and waived its subrogation rights. (Oct. 3, 2000 Motion for Summary Judgment, Exh. A).
On June 2, 2000, the Hayeses filed an amended complaint solely to collect UM/UIM benefits. The defendants were: Westfield; Calcutta Nursing Home, who was Mrs. Hayes' employer at the time of accident; Monroe Guaranty ("Monroe"), an insurance company that provided automobile coverage to Calcutta Nursing Home; Buckman Chevrolet-Buick ("Buckman Chevy"), Mr. Hayes' employer at the time of the accident; and Indiana Insurance Co. ("Indiana"), which supplied automobile coverage to Buckman Chevy. The Hayeses brought Monroe and Indiana into the case on the basis of Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, which extended UM/UIM coverage to certain employees by operation of law if those employees were deemed to be named insureds on the employer's automobile liability insurance policy.
On September 28, 2000, the Hayeses dismissed Calcutta Nursing Home and Buckman Chevy from the case.
On October 2, 2000, Indiana filed a Motion for Summary Judgment. Indiana argued that Westfield provided specific coverage to the Hayeses for the type of risk for which they were claiming loss, and that therefore, the Westfield policy provided primary coverage for the Hayeses' entire loss. Indiana cited the syllabus of Motorists MutualIns. Co. v. Lumbermens Mutual Ins. Co. (1965), 1 Ohio St.2d 105, in support.
On October 3, 2000, Monroe filed a Motion for Summary Judgment. Monroe argued that they were not liable for any UM/UIM coverage because the Hayeses had failed to provide timely notice to Monroe of the settlement with White, thus impairing Monroe's subrogation rights. In support Monroe cited, inter alia, Bogan v. Progressive Cas. Ins. Co. (1988),36 Ohio St.3d 22. Monroe also argued, similarly to Indiana's argument, that Westfield's coverage was primary and would completely compensate the Hayeses for their loss.
On October 4, 2000, Westfield filed its own Motion for Summary Judgment. Westfield argued that its policy, as well as the Monroe and Indiana policies, all contained identical language stating that the policies only provided excess coverage. Westfield argued that, when two or more insurance companies provide the same excess coverage, each company is required to pay a pro rata share of the loss, citing in supportBuckeye Union Ins. Co. v. State Auto Mut. Ins. Co. (1977),49 Ohio St.2d 213, syllabus.
On October 26, 2000, the trial court filed a judgment entry which resolved some of the outstanding issues in this case. Westfield was held to be liable, on a primary basis, to the Hayeses for $300,000, less the $100,000 already paid by White's insurance company. Monroe and Indiana were held to have secondary liability, on a pro rata basis, for any additional amounts to which the Hayeses may be entitled in excess of the Westfield policy. The court overruled Monroe's argument that the Hayeses' failure to give timely notice of their settlement with White relieved Monroe of liability. It is also clear that the central issue of the actual dollar amount of the Hayeses' claim was not resolved in the October 26, 2000 decision. The judgment entry nevertheless stated that it was a final appealable order.
On March 7, 2001, the Hayeses filed a Motion to Enforce Settlement. The Hayeses alleged that Westfield had made an unconditional offer to pay $100,000 to settle the case.
On March 23, 2001, the trial court filed a judgment entry purporting to rule upon the prior motion to enforce settlement. The judgment entry noted that the parties had signed an Agreed Judgment Entry which determined that the Hayeses were entitled to $100,000 in damages in addition to the amount already paid by the tortfeasor. The Agreed Judgment Entry was made a part of the court's decision. The court noted that Monroe did not sign the agreed entry. The court, notwithstanding, signed the entry and dismissed the case from its docket. It is from this latter judgment entry that Westfield has filed this appeal.
On July 31, 2001, Monroe filed a Motion to Dismiss this appeal alleging lack of appellate jurisdiction. We overruled that motion on September 19, 2001. Upon further review, we sua sponte raise the issue of whether this case presents us with a final appealable order, and we conclude that it does not.
An order of an inferior court is a final, appealable order only if the requirements of R.C. § 2505.02 and Civ.R. 54(B), if applicable, are met. Chef Italiano Corp. v. Kent State University (1989), 44 Ohio St.3d 86, syllabus. If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and the appeal must be dismissed. Davison v. Rini (1996), 115 Ohio App.3d 688, 692.
An order which resolves fewer than all the claims of all the parties in an action may constitute a final appealable order if it contains the words "there is no just reason for delay" as required by Civ.R. 54(B), and if it otherwise qualifies as final and appealable under R.C. §2505.02. Neither judgment entry at issue in this case contains the language required by Civ.R. 54(B), and therefore, we do not need to consider whether either entry qualifies as final and appealable under Civ.R. 54(B).
R.C. § 2505.02 sets forth five categories of final orders:
 "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 "(3) An order that vacates or sets aside a judgment or grants a new trial;
 "(4) An order that grants or denies a provisional remedy and to which both of the following apply:
 "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
 "(5) An order that determines that an action may or may not be maintained as a class action."
In this case, it is apparent that the trial court's order is not an order that vacates or sets aside a judgment or grants a new trial. It is also obvious that it is not an order that determines that an action may or may not be maintained as a class action. Therefore, R.C. §2505.02(B)(3) and (5) are inapplicable.
The trial court's order is also not an order concerning a provisional remedy. "`Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence." R.C. § 2505.02(A)(3). The judgment entries under review in this case attempt to deal with the ultimate issues arising from the Hayeses' complaint, namely, the insurance companies' contractual liability for the Hayeses' damages. These issues are not ancillary to the action, but rather, embody the essence of the action. Therefore, R.C. § 2505.02(B)(4) is not applicable.
The trial court's order is not an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment. "`Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. §2505.02(A)(2). "Orders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. § 2505.02." Polikoff v. Adam (1993), 67 Ohio St.3d 100, syllabus. "It is only the underlying action that is to be examined to determine whether an order was entered in a special proceeding, and not the order itself which was entered within that action." Walters v. The Enrichment Ctr. ofWishing Well, Inc. (1997), 78 Ohio St.3d 118, 123.
The underlying action in this case is a civil action arising out of a contract dispute over UM/UIM coverage. Breach of contract actions were known at common law prior to 1853. See, e.g., Brown v. Timmany (1851),20 Ohio 81. Therefore, R.C. § 2505.02(B)(2) does not apply.
Lastly, the trial court's order is not an order that affects a substantial right in an action that in effect determines the action and prevents a judgment pursuant to R.C. § 2505.02(B)(1). In State exrel. White v. Cuyahoga Metro. Hous. Auth. (1997), 79 Ohio St.3d 543, the Ohio Supreme Court acknowledged the general rule that, "orders determining liability in the plaintiffs' * * * favor and deferring the issue of damages are not final appealable orders under R.C. § 2505.02
because they do not determine the action or prevent a judgment." This Court has recently held that a UM/UIM judgment which left unresolved the issue of damages was not a final appealable order under R.C. §2505.02(B)(1). Bautista v. Kolis (2001), 142 Ohio App.3d 169, 175.
It is clear that the October 26, 2000, judgment left the issue of the Hayeses' damages unresolved. The March 23, 2001, Judgment Entry likewise does not resolve the issue of damages, at least with respect to Monroe, because Monroe did not join in the agreed entry. The trial court specifically noted that Monroe's attorney would not sign the entry: "[Monroe's] [a]ttorney Sophie Mitsopoulos declined to sign the Entry which the Court has signed and is being journalized herewith." (March 23, 2001 Judgment Entry).
An agreed judgment entry is the court's acknowledgment that the parties have entered into a binding contract. Spercel v. Sterling Industries,Inc. (1972), 31 Ohio St.2d 36, 39. Between the agreeing parties, an agreed judgment or consent judgment is as binding as if the merits had been litigated. Gilbraith v. Hixson (1987), 32 Ohio St.3d 127, 129. If a party has not agreed to the judgment, though, it can hardly be said to be binding on that party. Nor can it be presumed that a party has waived any rights by the mere fact of failing to join in an agreed judgment entry.
It is not even clear that the March 23, 2001, Judgment Entry resolved any issues with respect to the amount of damages which either Westfield or Indiana were liable to pay. The entry states:
 "The Court further finds that upon agreement of the parties Westfield shall make payment of One Hundred Thousand Dollars ($1000,000.00) on behalf of all defendants to Plaintiffs. This payment shall not be deemed a voluntary payment on the part of Westfield." (Emphasis added).
It is a basic contract law principle that, to have an enforceable contract, there must be a meeting of the minds of the parties to the contract. Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. In the case under review, Westfield did not voluntarily submit to the payment of $100,000 to the Hayeses. It cannot be said that there was a meeting of the minds that this dollar amount was the full or final amount of the Hayeses' damages when the payment was involuntary. Despite language in the entry setting the Hayeses' damages at $100,000, it would appear that entry does nothing more than force a transfer of funds from Westfield to the Hayeses while leaving unresolved a number of questions as to damages and liability.
Based on the foregoing analysis, we hold that the case at bar does not present us with a final appealable order, and we hereby dismiss the appeal. The fact that the trial court removed this case from its docket does not alter our analysis. If, after remand, the trial court does not reinstate this case on its docket, the parties may be able to resort to a writ of procedendo or mandamus to compel the resolution of the issues remaining in this case.
The instant appeal is dismissed for lack of a final appealable order.
Donofrio, J., concurs.
DeGenaro, J., concurs.