OPINION
{¶ 1} Plaintiff-appellants John Schlangen and Janine Schlangen (hereinafter "the Schlangens") appeal from a decision of the Montgomery County Court of Common Pleas which sustained the motion to dismiss of defendant-appellee Allied Pest Control, Inc. filed on September 29, 2005. The Schlangens filed a notice of appeal with this Court on October 24, 2005.
 II {¶ 2} In May of 2004, the Schlangens purchased a residence located at 4171 Rondeau Ridge in Kettering, Montgomery County, Ohio, from Robert and Emily Watson. The property in question was subject to a termite control contract issued by Allied and purchased by the Watsons on September 21, 1987. Prior to closing, the residence was inspected, and termites were discovered on the premises. Pursuant to the pre-existing contract, Allied performed another inspection of the residence and treated the property for termites on May 24, 2004. Allied also informed the Schlangens that the termite control contract would transfer to them along with the sale of the residence. The Schlangens were not present during the second inspection and treatment of the property and did not receive a copy of Allied's inspection report until the time of closing which occurred on June 25, 2004.
 {¶ 3} On July 8, 2004, the Schlangens discovered live termites in an upstairs bedroom in the residence. The Schlangens immediately contacted Allied who sent one of their technicians to the residence. The residence was inspected again and treated for termite infestation. On July 25, 2004, the manager of Allied, Tony Caserta, met with John Schlangen at the residence to discuss continued treatment of the termite problem as well as Allied's responsibility under the contract to repair areas in the home damaged by the termites.
 {¶ 4} On July 30, 2004, an Allied technician returned to treat the residence again for termites. Dissatisfied with Allied's continued treatment efforts, the Schlangens filed a pro se complaint in Kettering Municipal Court. Allied answered the Schlangens' complaint with a counterclaim requesting payment for the treatment which occurred on July 30, 2004. Up to that point, Allied had been servicing the Schlangens' residence pursuant to the termite control contract, thus not billing them.
 {¶ 5} On December 7, 2004, the Schlangens, now represented by retained counsel, filed a First Amended Complaint. They alleged that Allied's performance under the contract was negligent and proximately resulted in the termite damage and infestation of the residence. The Schlangens also alleged that the warranty offered by Allied was illusory and in violation of the Ohio Consumer Sales Practices Act (hereinafter the "CSPA"). Lastly, the Schlangens asserted that Allied's counterclaim was frivolous and also in violation of the CSPA. Because the amount in controversy now exceeded the monetary jurisdiction of the Kettering Municipal Court, the case was transferred to the Montgomery County Court of Common Pleas on December 10, 2004.
 {¶ 6} On March 18, 2005, the Schlangens asked the trial court for leave to file a second amended complaint requesting that they be allowed to file additional claims arising under the "Consent Judgment" entered into by Allied on April 17, 1996.
 {¶ 7} In 1996, the Ohio Attorney General brought an action against Allied on behalf of "all aggrieved consumers" pursuant to R.C. § 1345.07 of the CSPA. The action concerned the alleged illusory nature of the "Guarantee" provision of the termite control contract entered into by the Watsons in 1987. There were also allegations of ineffective inspection and ineffective termite treatment on the part of Allied.
 {¶ 8} In order to settle the action, Allied agreed to become subject to the terms of the Consent Judgment pursuant to R.C. §1345.07(F). The terms of the Consent Judgment explicitly state that it applies to all Allied customers who paid the annual renewal fee during the time period between May 10, 1992, and May 17, 1995, to maintain their termite control contract. The Consent Judgment was issued by Judge Jeffrey Froelich under Case No. 1994-CV-511 and explicitly stated that the issuing court "shall retain jurisdiction to enforce compliance with this judgment."
 {¶ 9} The Watsons were a member of the class of Allied customers affected by the Consent Judgment since they maintained their contract from 1987 until May, 2004, when the contract was assigned to the Schlangens. Critical to this case is the fact that the Watsons paid their renewal premium during the time period between May, 1992, and May, 1995. Thus, the Schlangens became subject to the terms of the Consent Judgment.
The Consent Judgment provided remedies to Allied customers for ineffective inspection and ineffective treatment. More importantly, the Consent Judgment provided that if new termite damage was discovered, Allied would pay the "entire cost of labor and materials" to repair any damage caused to a residence during the term of the termite control contract.
 {¶ 10} After the Schlangens asked for leave from the trial court to file a second amended complaint containing issues raised by the Consent Judgment, the court issued an order posing the following question:
 {¶ 11} "Under what legal theory or theories do the Plaintiffs assert that the consent agreements provide separate, independent claims or remedies from those already presented in the First Amended Complaint?"
 {¶ 12} The Schlangens responded by claiming that they were entitled to punitive damages along with the statutory remedies provided by the CSPA. They also alleged that they were entitled, pursuant to the 1996 Consent Judgment, to have their residence inspected, treated, and repaired. In the present case, Judge Dennis Langer overruled their motion for leave to file a second amended complaint stating that his court did not have jurisdiction to enforce the terms of the Consent Judgment issued by Judge Froelich.
 {¶ 13} On July 18, 2005, Allied filed a motion to dismiss, or in the alternative, a motion for summary judgment. In sustaining Allied's motion to dismiss, Judge Langer held that the "Schlangens' claims are predicated on the assigned warranty, which is subject to the terms and provisions of the 1996 Consent Judgment." Since the terms of the Consent Judgment explicitly state that Judge Froelich retained jurisdiction to enforce the agreement, Judge Langer further held that he did not have subject matter jurisdiction to enforce the Consent Judgment in a new action.
 {¶ 14} It is from this judgment that the Schlangens now appeal.
 II {¶ 15} Because both of the Schlangens' assignments of error essentially concern the same issue, we will address the following assignments simultaneously:
 {¶ 16} "THE TRIAL COURT ERRED TO PLAINTIFFS/APPELLANTS' MATERIAL PREJUDICE BY GRANTING DEFENDANT/APPELLEE'S MOTION TO DISMISS."
 {¶ 17} "THE TRIAL COURT ERRED BY DENYING PLAINTIFFS/APPELLANTS' MOTION FOR LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT."
 {¶ 18} In these assignments, the Schlangens contend that the trial court erred when it found that it did not have subject matter jurisdiction to hear their complaint for damages under the 1996 Consent Judgment. The Schlangens also assert that the trial court erred when it held that the claims raised in their First Amended Complaint arose out of the 1996 Consent Judgment and were, therefore, outside the jurisdiction of the court. The Schlangens argue that the Montgomery County Court of Common Pleas, as a whole, retained jurisdiction to adjudicate any issues with respect to the 1996 Consent Judgment. Thus, it was erroneous for Judge Langer to determine that jurisdiction vested solely in Judge Froelich insofar that he was the only judge on the common pleas bench who could rule on issues pertaining to the 1996 Consent Judgment.
 {¶ 19} Conversely, Allied contends that the Schlangens' argument concerning whether Judge Froelich or Judge Langer has jurisdiction is a "red herring." Instead, Allied frames the issue as involving the specific action in which the 1996 Consent Agreement may be enforced. Allied points out that the 1996 Consent Judgment was issued under Case No. 1994-CV-511. The Schlangens, however, attempted to enforce the Consent Judgment in a new and separate action in Case No. 2004-CV-8822. The crux of Allied's argument is that while any judge on the common pleas bench in Montgomery County would have jurisdiction to hear a new CSPA claim, Judge Froelich "specifically retained jurisdiction" in Case No. 1994-CV-511 to hear any claims regarding enforcement of the provisions of the 1996 Consent Judgment. Clearly, if a party's enforcement claims arose out of the 1996 Consent Judgment, then said claims would have to be adjudicated under Case No. 1994-CV-511, pending before Judge Froelich's court, rather than brought in a new and separate action. For the following reasons, we agree.
 {¶ 20} In support of its argument, Allied draws our attention to Montgomery County Local Rule 1.19, which concerns the assignment of cases for the common pleas bench. Allied contends that the following sections of the local rules clearly indicate that Judge Froelich is the judge who would retain jurisdiction over enforcement of the 1996 Consent Judgment:
 {¶ 21} "1. The individual assignment system is the procedure adopted by the Court for the assignment of cases. Pursuant to this system, each civil and criminal case shall be assigned by lot to a judge who will be responsible for determining all matters in the case."
 {¶ 22} Mont. County Loc. R. 1.19(I)(A)(1).
 {¶ 23} "If, at the drawing or at any subsequent time there are companion cases, these cases shall be assigned to the Judge whose name was drawn for the case filed first, if that Judge so determines."
 {¶ 24} Mont. County Loc. R. 1.19(II)(A)(1)(c)(1).
 {¶ 25} In light of the above rule, once a judge is assigned to a particular case, the same judge will remain assigned to companion cases or future matters related to the same issue previously determined. In Horne v. Woolever (1959),170 Ohio St. 178, 182, 163 N.E.2d 378, 382, the Ohio Supreme Court held that, as a general rule, a consent judgment operates as res judicata with the same force given to a judgment entered on the merits in a fully adversarial proceeding. Implicit in the rule is the recognition that a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment. In re Gilbraith (1987), 32 Ohio St.3d 127,512 N.E.2d 956, citing Sponseller v. Sponseller (1924),110 Ohio St. 395, 399, 144 N.E. 48, 50.
 {¶ 26} In Norwood v. McDonald (1943), 142 Ohio St. 299,305, the Ohio Supreme Court discussed the doctrine of res judicata:
 {¶ 27} "A comprehensive definition of res judicata is as follows: `The doctrine of res judicata is that an existing final judgment rendered on the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."
 {¶ 28} As Allied correctly notes, the Schlangens have not provided this Court with any authority whatsoever that demonstrates that every judge on the Montgomery County Common Pleas bench has authority over every pending case assigned to the court as a whole. In fact, no such authority exists. While Case No. 1994-CV-511, originally assigned to Judge Froelich, may not be "pending" in the sense that future proceedings are scheduled, the simple nature of the 1996 Consent Judgment requires that it have prospective application if it is to be enforced. Thus, Judge Froelich retains continuing jurisdiction over all claims arising out of the 1996 Consent Judgment.
 {¶ 29} The Schlangens argue that 1994-CV-511 is a closed case, and they were not even parties to the case. That they were not named parties to that case is irrelevant in the instant matter.
 {¶ 30} As previously stated, the Watsons paid their renewal premium during the time period between May, 1992, and May, 1995. The terms of the Consent Judgment explicitly state that it applies to all Allied customers who paid the annual renewal fee during the time period between May 10, 1992, and May 17, 1995, to maintain their termite control contract. Accordingly, as assignees of the termite control contract from the Watsons, the Schlangens became subject to the terms of the Consent Judgment. "Legally, an assignment is a transfer of property or of some right or interest from one person to another, which causes to vest in another his or her right of property or interest in property. * * * As a general rule, an assignee `stands in the shoes of the assignor * * * and succeeds to all rights and remedies of the latter.'" Inter Ins. Exchange v. Wagstaff
(1945), 144 Ohio St. 457, 460, 59 N.E.2d 373. Clearly, the Schlangens' instant cause of action is an attempt to initiate a new and separate action based upon the same facts that were already litigated and remedied by the 1996 Consent Judgment.
 {¶ 31} The Schlangens argue that the 1996 Consent Judgment is not the exclusive remedy for their claims against Allied. In support of this contention, the Schlangens cite to language in the 1996 Consent Judgment which demonstrates that they are entitled to additional remedies outside of the parameters of the Consent Judgment.
 {¶ 32} The first provision the Schlangens rely on states as follows:
 {¶ 33} "* * * this Consent Judgment Entry and Order shall in no way exempt plaintiffs [Allied] from any other obligations imposed by law and nothing contained herein shall relieve plaintiffs [Allied] of any legal responsibility for any acts of commission or omission by them."
 {¶ 34} The Schlangens argue that this provision demonstrates that the 1996 Consent Judgment is not the only means through which an aggrieved party may seek redress. Allied points out, and we agree, that the 1996 Consent Judgment does not provide a remedy for any act or failure to act by Allied which concerns laws not addressed in the Consent Judgment. The Schlangens, however, have not brought any claims in either of their complaints that fall outside of those claims covered in the 1996 Consent Judgment. In their reply brief, the Schlangens argue for the first time on appeal that they are alleging negligence and CSPA violations arising out of their own transactions with Allied separate from those dealt with by the 1996 Consent Judgment. Other than the Schlangens' bare assertion in this regard, there is simply no support in the record for this argument. All of the Schlangens' causes of action for ineffective inspection, ineffective treatment, and violation of the CSPA arise out of the 1996 Consent Judgment. As assignees of the termite control contract from the Watsons, the Schlangens' sole remedy lies in the 1996 Consent Judgment.
 {¶ 35} The second provision the Schlangens rely on states as follows:
 {¶ 36} "IT IS FURTHER ORDERED that nothing in this Consent Judgment Entry and Order shall in any way be deemed to preclude any investigative or enforcement action against Plaintiffs [Allied] with respect to consumer transactions which are not subject to the relief provisions set forth in paragraph (B) of this Order. The transactions which are the subject of this action are those contracts defendant executed between May 10, 1992 and May 17, 1995, [and] the renewals from customers who paid the annual fee during this same time period."
 {¶ 37} As previously stated, the Watsons renewed their termite control contract during the three-year time period stated in the provision above. The terms of the Consent Judgment explicitly state that it applies to all Allied customers who paid the annual renewal fee during the time period between May 10, 1992, and May 17, 1995, to maintain their termite control contract. Accordingly, as assignees of the termite control contract from the Watsons, the Schlangens became subject to the terms of the Consent Judgment. The record simply does not support the Schlangens' assertion that any of their claims arose outside the 1996 Consent Agreement. Thus, the 1996 Consent Judgment is the Schlangens' exclusive remedy for their claims against Allied.
 {¶ 38} As a final matter, Allied's counterclaim for unjust enrichment did not survive Judge Langer's dismissal of the Schlangens' initial complaint. Once the matter is properly argued as a motion to enforce or a motion for contempt under case number 1994-CV-511, Allied can defend itself against the Schlangens' claims in any manner it deems fit. Conversely, the Schlangens are free to advance whatever argument they find necessary to support their position.
 {¶ 39} The trial court's holding that it did not have subject matter jurisdiction in the instant case is erroneous as a matter of law. Clearly, the Montgomery County Court of Common Pleas has subject matter jurisdiction to hear any claims advanced by a plaintiff if the minimal monetary limits are met. However, the trial court correctly held that the Schlangens' claims were subject to the explicit terms of the 1996 Consent Judgment as assignees of the termite control contract entered into by the Watsons prior to the Schlangens' purchase of the residence located at 4171 Rondeau Ridge. Additionally, since the 1996 Consent Judgment was issued in the case before Judge Froelich who has retained jurisdiction to enforce that judgment, claims arising out of the 1996 Consent Judgment must be asserted, adjudicated, and enforced in that case.
 {¶ 40} The Schlangens' assignments of error are overruled.
 III {¶ 41} Both of the Schlangens' assignments of error having been overruled, the judgment of the trial court is affirmed.
Brogan, J., and Fain, J., concur.